UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

COLUMBIA GAS TRANSMISSION            :       Civil Action No. 07 cv 5739 (KMK)
CORPORATION,                                              ECF CASE
                                     :
                    Plaintiff,       :

        - against -                  :

LEWIS PERRY, YOLANDA PERRY,          :
ALEXANDER ROAD ASSOCIATION, INC.,    :
ANTHONY VULPONE, ESTATE OF ANTHONY
VULPONE, ROBERT ANTALOCY,            :
THOMAS HARRIS, DOLORES A. KORZ,
JOHN P. KILDUFF, KENNETH LEE d/b/a   :       **DECLARATION IN SUPPORT**
"I CAN GET IT FOR YOU WHOLESALE",            **OF PRELIMINARY RELIEF**
SALLIE E. HARMON, PAUL RUGGIERO,     :
MICHELLE RUGGIERO, TERRANCE
DONNARY, ANDREW PERNA, KAREN         :
PERNA, ROBERT McMAHON, CARL
McMAHON, KELVIN M. LEWIS, MARCHELLE  :
KIRBY, JHON GORDON, RUTH MONROE,
EDWARD R. MATEO, ROSANN P. MATEO,    :
ADAM DORAN, NICOLE DORAN, CREDENCE
DEVELOPMENT INC., RICHARD DELISI,    :
ADELAIDE FAULKNER, PAUL ESPEL,
CAROL ESPEL, DAWN FORNOFF, RICHARD   :
BURTON, GARY MARINA, and JOHN DOE
NO. "1" through "10" inclusive, the names of the  :
last ten defendants being ficticous, the true names
being unknown to plaintiff, the parties intended   :
being those having an ownership interest in
property effected by a certain easement described  :
in the complaint,
                                     :
                    Defendants.
------------------------------------------------------------X

Scott S. McKessy, declares under penalty of perjury:

        1.      I am a member of Reed Smith LLP, attorneys for plaintiff Columbia Gas

Transmission Corporation ("Columbia").  I am fully familiar with the facts set forth herein, and

submit this declaration, pursuant to 28 U.S.C. § 1746, in support of Columbia's instant request

for preliminary relief preventing defendants from interfering with Columbia's rights under a

certain easement and granting Columbia and its assigns immediate access to the defendants'

properties in order to perform certain preconstruction work in connection with a federally approved natural gas pipeline project.

## INTRODUCTION

2.      Columbia is a natural gas pipeline company that transports natural gas throughout the State of New York and elsewhere. In this regard, Columbia has spent considerable time, money and effort in acquiring easements and rights-of-ways across hundreds of thousands of parcels of properties. It uses these rights, *inter alia*, to build, replace, repair, expand, maintain and operate its natural gas pipeline network. In connection with a federally approved and sanctioned natural gas pipeline project, 181 miles of natural gas pipeline will be laid and/or replaced from Corning, New York to Ramapo, New York (the "Millennium Pipeline Project").

3.      Construction for this project, in part, traverses and/or abuts the defendants' properties and the project, as a whole, has already been approved by the Federal Energy Regulatory Commission ("FERC" or the "Commission"). A copy of the FERC Order is annexed hereto as Exhibit A. Moreover, Columbia already possesses an easement – duly recorded and of record since 1949 – that allows it, and its assigns, the right to, among other things, lay, replace and change a natural gas pipeline across the defendants' various properties. A copy of the Easement is annexed hereto as Exhibit B. Each defendant purchased his or her respective property rights subject to Columbia's grant of rights. *See* Complaint ¶ 37, a copy of the Complaint is annexed hereto as Exhibit C.

4.      Recently, a couple of the defendant landowners have taken the position that the rights granted under Columbia's easement do not allow Columbia or its assigns to do those things which the express terms of the easement authorize Columbia to do – namely:  perform construction upon the existing pipeline. A copy of the appearing defendants' answer is annexed hereto as Exhibit D. The remaining defendants have not taken the same position and were named herein merely because they were necessary parties. All defendants, however, have long been aware of the construction project and the impact it will have upon their properties, and have

-2-

been even longer aware of the express grant of rights under Columbia's easement. *See* accompanying Declaration of Andrew Lake, ¶ 13, executed September 27, 2007 ("Lake Decl.")

5.      As a result, the instant lawsuit was commenced to adjudicate Columbia's rights under its easement and facilitate the timely progress of the Millennium Pipeline Project. The appearing defendants have also asserted a counterclaim for injunctive relief seeking to halt the Millennium Pipeline Project. Exhibit D.

6.      The Millennium Pipeline Project has now reached the point in time that, in order to abide by the FERC approved timeline, Columbia and its assigns need immediate access to defendants' properties in order to perform necessary preconstruction work. Lake Decl. ¶¶ 7-10. In this regard, FERC requires a certain stretch of pipeline construction to be cleared beginning October 1, 2007 and be completed no later than March 30, 2008 due to wildlife issues. *See* FERC approval of 2007 Construction Implementation Plan, annexed hereto as Exhibit E. Defendants' properties, as well as approximately 220 other parcels of land, fall within this designated stretch of land. *See* Construction Alignment Sheets, annexed hereto as Exihibt F.

7.      Consequently, Columbia and its assigns require immediate access to the defendants' properties to begin this preconstruction work, keep the project on schedule, fulfill certain commercial commitments and maintain obligations to existing customers.

<u>LIKELIHOOD OF SUCCESS</u>

8.      There is more than a likelihood of success that Columbia will prevail in the instant action. First, Columbia obtained its easement in 1949, the easement has been of record since that time and it explicitly allows Columbia and its assigns access to the various defendants' properties to perform construction work. Exhibit B. Specifically, Columbia and its assigns have the right and privilege to ingress, egress and regress across defendants' properties "to lay, maintain, operate, repair, change and remove" a natural gas pipeline across defendants' properties. *Id.* This grant of rights is express, clear and binding upon each of the defendants' properties. Accordingly, in times of construction, Columbia's reasonable use of the defendants' properties temporarily expands to accommodate the required construction equipment and

process, so that the pipeline may be safely and properly laid, changed and removed. Lake Decl. ¶¶ 18-21

9.     Furthermore, the FERC specifically approved of the pipeline's construction efforts but, beyond the easement, this allows the defendants' properties to be condemned and immediate access granted to perform the required construction if an agreement with the landowner cannot be reached. If condemning without an easement can allow for immediate access to property, then there should be no doubt about Columbia's success in gaining access to the properties under the terms of its easement.

<u>**IRREPARABLE HARM WILL OCCUR**</u>

10.     Irreparable harm will occur absent immediate access to the defendants' properties. To begin with, the FERC approval for the tree clearing requires it to begin by October 1, 2007 and be completed no later than March 30, 2008 due to issues relating to the Indiana bat. There are over 220 parcels of land within this specified area and defendants' properties are among those. Not only is this a big task, but the tree clearing efforts will also battle weather conditions during this short wintry window of time. And defendants should not be allowed to "hold" up this process and the project proceed around them as that would only create inefficiencies in the work and increase costs to the project. Plus, the project needs to remain on time to meet commercial commitments for the transmission of gas beginning in November 2008, but also to ensure that construction does not disrupt Columbia's continuing obligations to transmit gas to its thousands of existing customers.

<u>**EQUITIES TIP HEAVILY IN FAVOR OF PRELIMINARY RELIEF**</u>

11.     The equities tip decidedly in Columbia's favor. The Millennium Pipeline Project is a federally sanctioned project which the FERC deemed to be in the best interests of the citizens and businesses of the State of New York. Exhibit A. The instant tree clearing at this time is to mitigate harm to the Indiana bat. Moreover, the easement is clear and each defendant purchased their property rights subject to the easement. In addition, the use of the construction work space is temporary and only what is necessary to safely and properly perform the

construction. A copy of the alignment sheets showing the construction area is annexed hereto as Exhibit F. Plus, defendants' properties will be remediated in accordance with FERC requirements after the project is completed. Lake Decl. ¶ 22. And, finally, to the extent that Columbia or its assigns cause any compensable damage (damage to marketable timber, fences, crops, *etc.*) while using this temporary work space, the landowner is compensated. Lake Decl. ¶ 22.

12.     In contrast, affected landowners have long been aware of the Millennium Pipeline Project, the construction required to be performed, and told how to object, intervene or make their concerns known. Lake Decl. ¶ 6.

13.     Defendants have even longer been aware of rights granted under Columbia's easement. For defendants to have waited this long to contest the right to perform the requisite construction across their properties is simply inequitable, untimely and cannot be made in this forum.

14.     Plus, not all of the defendants claim Columbia and its assigns do not have the right to perform the construction. Indeed, some have entered into agreements with Columbia resolving this action as to them (the McMahons, Gary Marina, Ruth Monroe) and others have already been paid anticipated damages for the work to be performed (the McMahons, the Pernas, Sallie Harmon, Terrance Donnery, Ruth Monroe, and Jhon Gordon). And in this regard, Columbia is willing to post a bond in the amount of unpaid estimated damages, which it calculates as $30,000. Lake Decl. ¶ 23.

15.     Separately, Columbia has, to date, been unable to effectuate service upon two defendants: Thomas Harris and Kenneth Lee d/b/a "I Can Get It For You Wholesale." Despite diligent efforts to locate them and serve them, Columbia has not been able to serve them and respectfully requests that its time to do so is extended an additional 90 days. Additionally, Columbia, respectfully requests that a different method of service be authorized by this Court, namely:  service effectuated by serving the papers via next day mail upon their last known

addresses and by affixing a copy of the papers to the property they own that is subject to the Easement.

16.      Accordingly, the instant application should be granted in its entirety.

17.      No prior application for the relief requested herein has been made to this or any court.

18.      Copies of the papers supporting Columbia's instant application have been sent to all defendants (or their counsel for those that have appeared herein) via overnight mail on Thursday, September 27, 2007, along with correspondence indicating Columbia would be submitting this application to the Court on the morning of October 1, 2007.

**WHEREFORE**, it is respectfully requested that this Court grant Columbia's instant application for preliminary relief and grant Columbia such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 27, 2007.

_____
Scott S. McKessy

Lake Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

COLUMBIA GAS TRANSMISSION                    :        Civil Action No. 07 cv 5739 (KMK)
CORPORATION,                                                          ECF CASE
                                                             :
                            Plaintiff,
                                                             :

        - against -
                                                             :

LEWIS PERRY, YOLANDA PERRY,
ALEXANDER ROAD ASSOCIATION, INC.,            :
ANTHONY VULPONE, ESTATE OF ANTHONY
VULPONE, ROBERT ANTALOCY,                    :
THOMAS HARRIS, DOLORES A. KORZ,
JOHN P. KILDUFF, KENNETH LEE d/b/a           :        **DECLARATION IN SUPPORT**
"I CAN GET IT FOR YOU WHOLESALE",                     **OF PRELIMINARY RELIEF**
SALLIE E. HARMON, PAUL RUGGIERO,             :
MICHELLE RUGGIERO, TERRANCE
DONNARY, ANDREW PERNA, KAREN                 :
PERNA, ROBERT McMAHON, CARL
McMAHON, KELVIN M. LEWIS, MARCHELLE          :
KIRBY, JHON GORDON, RUTH MONROE,
EDWARD R. MATEO, ROSANN P. MATEO,            :
ADAM DORAN, NICOLE DORAN, CREDENCE
DEVELOPMENT INC., RICHARD DELISI,            :
ADELAIDE FAULKNER, PAUL ESPEL,
CAROL ESPEL, DAWN FORNOFF, RICHARD           :
BURTON, GARY MARINA, and JOHN DOE
NO. "1" through "10" inclusive, the names of the  :
last ten defendants being ficticous, the true names
being unknown to plaintiff, the parties intended  :
being those having an ownership interest in
property effected by a certain easement described  :
in the complaint,
                                                             :
                            Defendants.
-----------------------------------------------------------------X

        ANDREW LAKE, declares under penalty of perjury:

        1.      I am an Operations Manager employed by Columbia Gas Transmission

Corporation ("Columbia"), the plaintiff in this action.  I am fully familiar with the facts set forth

herein, and submit this declaration, pursuant to 28 U.S.C. § 1746, in support of Columbia's

instant application for preliminary relief granting Columbia and its assigns immediate access to

portions of the defendants' properties in order to begin performing certain pre-construction work

and clearing in connection with a Federal Energy Regulatory Commission ("FERC") certificated natural gas pipeline project.

## INTRODUCTION

2.     Columbia owns and operates natural gas pipelines throughout the State of New York and elsewhere. The instant preliminary relief is needed in order for Columbia and its assigns to fulfill contractual obligations and to keep the 181 mile Millennium Pipeline Project on schedule and in compliance with its FERC Certificate of Public Convenience and Necessity. In addition to the FERC Order approving and authorizing this construction, Columbia possesses an easement that allows it and its assigns ingress, egress and regress across defendants' properties in order to, *inter alia*, remove, change and lay a natural gas pipeline.

3.     The area required to be cleared, in this pre-construction phase of the project, is only what is reasonable and necessary in order to properly and safely perform the construction work authorized by FERC, minimize environmental harm, and to effectuate the purpose of the grant of rights under the relevant easement. The affected land will be remediated after the project is completed and the affected landowners will be compensated for any compensable damages inflicted outside of Columbia's permanent right-of-way. Columbia is prepared to post a bond for these estimated damages.

4.     Moreover, Columbia and others will be irreparably harmed by delay in getting access to the properties. First, the FERC approved a 2007 construction implementation plan for the work for which Columbia and its assigns now need access. In order to comply with the FERC's Order to minimize the adverse affects the Millennium Pipeline Project may have on the Indiana bat, tree clearing is to begin October 1, 2007 and be completed by March 30, 2008 within a 19 mile stretch that encompasses defendants' properties; but defendants' properties are only a handful of the approximately 220 parcels that need to be cleared during this short time period, which time constraints will be further hampered by adverse weather conditions. A copy of the FERC 2007 Construction Authorization is annexed hereto as Exhibit E. Second, the

-2-

Millennium Pipeline Project needs to remain on schedule as commercial commitments to, among others, local utilities have been made based on a November 2008 completion date.

## THE MILLENNIUM PIPELINE PROJECT

5.      In the late 1990s, the initial application for Millennium Pipeline Project was submitted to FERC and received full FERC approval in 2001.  An application to amend and downsize the Millennium Pipeline Project was submitted to FERC in Summer 2005, that amendment was approved in December 2006 and the project now consists of, in part, 181 miles of 24-30 inch diameter pipeline running from Corning to Ramapo New York.  The pipeline will transmit approximately 525,400 deketherms of gas per day to the New York area.  This will be a substantial increase in the availability of natural gas as a source of fuel for the citizens and businesses of the State of New York.  The new pipeline will also refurbish Columbia's natural gas transmission infrastructure in New York.

6.      In connection with the initial FERC application, as well as each subsequent amendment, the defendants were provided with project information.  Included with this information was a FERC brochure detailing the construction process, the use of the landowner's land during this project, the gas company's right to access of landowner's property, and detailed the process by which the landowners of record at that time could object, intervene, and have their concerns aired.  A copy of this correspondence and its attachments is annexed hereto as Exhibit G. Landowners also received periodic updates concerning the Millennium Pipeline Project.  The three most recent notices are annexed hereto as Exhibits H, I, and J.

7.      Part and parcel of the initial application and subsequent amendments for the Millennium Pipeline Project to the FERC were the construction footprints necessary for the safe operation and performance of the construction work.  FERC reviewed and approved of the construction footprint for this project.  Attached hereto as Exhibit A is the relevant FERC Order.  Moreover, it is Columbia's practice to, and it did, explain the construction footprint to the affected landowners.  A copy of the alignment sheet containing the present construction footprint across defendants' properties is annexed hereto as Exhibit F.

8.     The FERC Order requires that the project be completed by December 21, 2009. But in order to accomplish this task and have remediation efforts completed by then and to meet commercial commitments for the transmission of natural gas, the pipeline needs to be transmitting natural gas by November 2008. This date also ensures the pipeline's ability to meet the high winter demands for natural gas during the Winter 2008 season. These commitments could be negatively impacted if the project's timetable is delayed.

9.     Indeed, the construction and preconstruction cannot proceed around defendants' properties. There are several crews that are involved in this project: each with a specific purpose; and each to follow another in a certain sequence. To throw this assembly line off substantially increases project inefficiencies and costs.

10.    Moreover, FERC has authorized that over 220 parcels of land be prepped for construction and has authorized that those parcels (from Mile Post 347.6 through Mile Post 367) be cleared of trees during the period October 1, 2007 through March 30, 2008 "to mitigate potential impacts upon Indiana bats." Exhibit E. All of defendants' properties herein fall within Mile Post 363 through Mile Post 365 — within the designated tree clearing area authorized by FERC. *See* Alignment Sheets, Exhibit F. Further, the Millennium Pipeline Project must remain on schedule in order to ensure that the thousands of existing Columbia customers maintain uninterrupted service. The project's construction timeline needs to be carefully monitored and timed so that certain of Columbia's transmission lines can be brought off-line without interrupting existing service and to avoid this necessary process from being delayed due to peak demand periods.

11.    Finally, Columbia is under contract to provide Millennium Pipeline LLC access to perform this work as Columbia has an easement granting Columbia and its assigns the right to perform this construction work on their properties.

12.    The bottom line is that without immediate access, compliance with FERC requirements is threatened, construction costs substantially increased, contract commitments jeopardized, and public interest thwarted.

-4-

## THE EASEMENT

13.    In 1949, Home Gas Company, predecessor-in-interest to Columbia, obtained from Lillian A. Alexander, defendants' predecessor-in-interest, an easement across certain property to lay, maintain, operate, repair, change and remove a natural gas pipeline with ingress and egress to the same (the "Easement"). A copy of the Easement is annexed hereto as Exhibit B. The grant also included the right, at any time, to lay a second line upon the same terms and conditions as the initial lay. The Easement was duly recorded among the land records of the Office of the Orange County Clerk on August 30, 1949, in Liber 1140, at Page 119. Lillian A. Alexander's property was subsequently subdivided into various plots, and the subdivisions that are subject to Columbia's Easement are owned by the various defendants named herein. The Millennium Pipeline Project will proceed using the rights granted under the Easement.

### A.    Permanent ROW

14.    The rights granted under the Easement are explicit, Columbia has, among other rights, the right to operate, inspect, test, and maintain its pipelines in accordance with applicable federal and state laws and regulations, and other applicable safety standards. In this regard, Columbia must be able to readily locate and access the pipeline, to inspect the pipeline, and be able to take all steps necessary to allow early detection of leaks with the concomitant ability to take rapid corrective actions if required. Delays in this regard can result in catastrophic failures which could jeopardize public safety.

15.    Among other activities, Columbia personnel periodically perform a variety of tests on its natural gas pipelines and attendant facilities which requires unobstructed access to its various lines. Operation and maintenance of a natural gas pipeline also requires routine inspections across the right-of-way by Columbia's crews and agents and, as a result, access to these right-of-ways cannot be restricted or obstructed, in any way, by the subservient landowners.

16.    In order to carry out these, as well as other activities, in compliance with applicable safety and maintenance regulations, Columbia must maintain and keep clear an

-5-

approximate twenty-five (25) foot wide area on both sides of its pipeline. The Easement grants Columbia an undefined width within which to, *inter alia*, maintain and operate a natural gas pipeline over and through the applicable properties. The fifty (50) foot area Columbia requires is the reasonable and necessary width for it to comply, in the ordinary course of its business, with all applicable laws and to appropriately enjoy the rights and uses granted under the Easement. Columbia considers this fifty (50) foot width to be its permanent right of way across the properties (the "Permanent ROW") and has long protected this area from any encroachments by the defendant landowners – requiring the landowners to obtain Columbia's permission before allowing any decks, fences or other encroachments from being placed within the Permanent ROW. Pictures of the Permanent ROW are annexed hereto as Exhibit K.

17.    This distance allows Columbia crews and agents, *inter alia*, to inspect for and detect gas leaks and perform other safety related inspections. It also allows for normal operational and maintenance activities to be performed, while providing for safe personnel, vehicular and equipment traffic along either side of the natural gas pipeline. Indeed, crossing high-pressure pipelines with heavy equipment may cause undue mechanical stress on a pipeline and could lead to ruptures. This distance, among other things, also provides a sufficient perimeter of protection from unauthorized excavations around or near the pipeline that may further endanger public safety. Columbia has long maintained its Permanent ROW.

**B.    Temporary Work Space**

18.    The Easement also grants Columbia, and any of its successors and assigns, the express right and privilege to lay, change and remove a natural gas pipeline. When construction is needed to lay, repair and/or replace the existing pipeline, the reasonable and necessary width of the Easement can expand to one hundred fifty (150) feet or more in total width. This temporary expansion of the usual fifty (50) foot Permanent ROW is needed to allow and accommodate proper and safe staging, laying, repairing and replacement of the pipeline (the "Temporary Work Space").

-6-

19.     The actual width of the Temporary Work Space required to properly and safely lay, repair and/or replace a pipeline is determined by the size of the pipe being laid, construction equipment needed, the steepness of the terrain, environmental requirements, and features being crossed. For example, a road crossing typically requires a staging area on either side of the road with a typical width of one hundred twenty-five (125) feet to one hundred fifty (150) feet or more. This area is needed to string and weld the pipe, install a road pad, dig a bore hole, store the excavated material, allow for parking of construction vehicles and equipment, and provide space for topsoil if required. An explanation of the construction process, as explained by FERC, can be found in the FERC brochure annexed hereto as Exhibit G.

20.     In this regard, the construction footprint for the Millennium Pipeline Project was created using, among others, the aforementioned considerations – and while efforts were made to minimize the impact this Temporary Work Space would have on the landowners, inconveniences are inherent in any construction project such as the Millennium Pipeline Project. It is also important to note that the Temporary Work Space is not uniformly expanded, but only enlarged in areas as needed. *See* Alignment Sheets, Exhibit F.

21.     Again, Columbia and its agents met with defendants to explain the scope of the Temporary Work Space, the project and the impact the Temporary Work Space had upon their properties.

22.     Columbia recognizes that this is only a temporary work space and compensates landowners for any reasonable and compensable damage Columbia causes as a result of its work in the Temporary Work Space (*i.e.* removal of fences, clearing of marketable timber, *etc.*). Afterwards, Columbia remediates the affected properties in accordance with FERC guidelines.

## ANTICIPATED DAMAGES

23.     An assessment of the anticipated damages not-yet-paid has been made, and based upon the marketable timber and other encroachments that need to be removed from the Temporary Work Space area, Columbia estimates total compensable damages to be $30,000.

The following defendants have already been paid for anticipated damages: the Pernas, the McMahons, Sallie Harmon, Terrance Donnery, Ruth Frazer-Munroe, JhonGordon.

**WHEREFORE**, it is respectfully requested that this Court grant Columbia's motion for an order enjoining the defendants from interfering with Columbia's easement granting it and its assigns immediate access to the defendants' properties and granting Columbia such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 27 , 2007.

_____
Andrew Lake

-8-

**Exhibits A through K of the Declaration in Support of Preliminary Relief Are Voluminous and are available for inspection at the offices of Reed Smith LLP**