UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

COLUMBIA GAS TRANSMISSION
CORPORATION,

                    Plaintiff,

   - against -

LEWIS PERRY, YOLANDA PERRY,
ALEXANDER ROAD ASSOCIATION, INC.,
ANTHONY VULPONE, ESTATE OF ANTHONY
VULPONE, ROBERT ANTALOCY,
THOMAS HARRIS, DOLORES A. KORZ,
JOHN P. KILDUFF, KENNETH LEE d/b/a
"I CAN GET IT FOR YOU WHOLESALE",
SALLIE E. HARMON, PAUL RUGGIERO,
MICHELLE RUGGIERO, TERRANCE
DONNARY, ANDREW PERNA, KAREN
PERNA, ROBERT McMAHON, CARL
McMAHON, KELVIN M. LEWIS, MARCHELLE
KIRBY, JHON GORDON, RUTH MONROE,
EDWARD R. MATEO, ROSANN P. MATEO,
ADAM DORAN, NICOLE DORAN, CREDENCE
DEVELOPMENT INC., RICHARD DELISI,
ADELAIDE FAULKNER, PAUL ESPEL,
CAROL ESPEL, DAWN FORNOFF, RICHARD
BURTON, GARY MARINA, and JOHN DOE
NO. "1" through "10" inclusive, the names of the
last ten defendants being ficticous, the true names
being unknown to plaintiff, the parties intended
being those having an ownership interest in
property effected by a certain easement described
in the complaint,

                    Defendants.
------------------------------------------------------------X

Civil Action No. 07 cv 5739 (KMK)
ECF CASE

**REPLY DECLARATION IN
FURTHER SUPPORT OF
<u>PRELIMINARY RELIEF</u>**

ANDREW LAKE, declares under penalty of perjury:

1. I am an Operations Manager employed by Columbia Gas Transmission Corporation ("Columbia"), the plaintiff in this action. I am fully familiar with the facts set forth herein, and submit this reply declaration, pursuant to 28 U.S.C. § 1746, in further support of Columbia's instant application for preliminary relief granting Columbia and its assigns immediate access to portions of the defendants' properties in order to begin performing certain

pre-construction work and clearing in connection with a Federal Energy Regulatory Commission ("FERC") certificated natural gas pipeline project.

## THE EASEMENT

2. I have worked for Columbia for 25 years and have been involved in and familiar with maintaining and operating its natural gas transmission pipelines. I have also been involved with projects relating to construction on Columbia's pipelines – most recently, the Millennium Pipeline Project.

3. I have been informed that some of the defendant-landowners ("Responding Defendants") have opposed Columbia's instant application seeking immediate access to the landowner's properties, in part, because I only made conclusory statements in my prior declaration that the width of the Permanent ROW and the width of any Temporary Work Space were reasonable and necessary. This simply is not true.

4. Again, as I previously stated, in 1949, Columbia's predecessor-in-interest obtained the Easement from Lillian A. Alexander. The Easement is undefined in its width, but the stated purpose of the grant was to, *inter alia*, allow the gas company to lay, maintain and operate a natural gas pipeline. At the time the Easement was granted it also anticipated future construction projects on that line (such as the Millennium Pipeline Project) by specifically allowing the gas company to remove, repair and change the natural gas pipeline situated across Responding Defendants' properties.

5. In this regard, in my prior declaration, I explained why a fifty-foot wide permanent easement was reasonable and necessary for maintaining and operating a natural gas pipeline – I did not merely just say it. I will not waste this Court's time by reiterating them again herein, but I refer this Court to paragraphs 14 – 17 of my prior declaration for a specific explanation of why fifty feet is needed. Also attached to the initial moving papers were pictures of the Permanent ROW – an approximate fifty-foot width. *See* Exhibit K to Columbia's initial moving papers.

6.  As for the Temporary Work Space, I, too, explained why it is reasonable and necessary for an enlargement of the easement, on a temporary basis, during times of construction. Again, I will not waste this Court's time by reiterating the reasons once more herein, but I respectfully refer this Court to paragraphs 18 – 20 of my prior declaration for an explanation as to why this temporary enlargement is necessary.

## BOND

7.  As I mentioned in my prior submission to this Court, some of the defendant-landowners have been compensated for anticipated damages caused by the use of the Temporary Work Space as set forth on the alignment sheets annexed as Exhibit F to Columbia's initial moving papers. And that the remaining anticipated compensable damages was estimated at $30,000.

8.  While the Responding Defendants do not claim that this figure is wrong, they claim that the bond should be set using actual damages and not anticipatory damages. But the tree clearing has not occurred yet so there are no actual damages, just estimates of the compensable damages. Further, I referred to them as anticipatory damages because an unforeseen issue may arise during the course of the construction project that may force the construction footprint to be reconfigured (either larger or smaller) and this damage calculation may change. As a result, I refer to the $30,000 as anticipatory damages.

9.  Based upon my own experience and my conversations with people responsible for calculating compensable damages on the defendant landowner's property, the following is a breakdown of the $30,000 figure:

> ➤ Estate of Vulpone: the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $1,000;
>
> ➤ Robert Antalocy: the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $1,000;
>
> ➤ Thomas Harris: the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $2,500;

- John Kilduff/Dolores Korz: the assessment of the marketable timber and of a shed that are required to be removed within construction footprint as detailed on the alignment sheet was calculated at $7,000;

- Kenneth Lee d/b/a "I Can Get It For You Wholesale": the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $2,173;

- Marchelle Kirby/Kelvin Lewis: the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $1,086;

- Jhon Gordon: the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $1,500;

- Lewis Perry/Yolanda Perry: the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $500;

- Richard DeLisi: the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $1,000;

- Paul Espel/Carol Espel: the assessment of the marketable timber that is required to be removed within construction footprint as detailed on the alignment sheet was calculated at $700;

- Gary Marina: the assessment of the marketable timber, flowers and shrubs that are required to be removed within construction footprint as detailed on the alignment sheet was calculated at $7,000.

10. Columbia does not anticipate causing any compensable damage to the properties of: Adam Doran/Nicole Doran; Edward Mateo/Rosann Mateo; Creedence Development, Inc.; Adelaide Faulkner; Richard Burton/Dawn Fornoff; and the Alexander Road Association, Inc. (to the extent it has any rights).

11. As the Court will see, the sum of these anticipated damages comes in at less than the $30,000 suggested bond amount, but Columbia has rounded that figure up to cover any incidental increases in its projections.

**WHEREFORE**, it is respectfully requested that this Court grant Columbia's motion for an order enjoining the defendants from interfering with Columbia's easement granting it and its assigns immediate access to the defendants' properties and granting Columbia such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 4, 2007.

                                                  _____ 10/4/07
                                                           Andrew Lake