**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x

**COLUMBIA GAS TRANSMISSION CORPORATION,**

*Plaintiff,*

-*against*-

**LEWIS PERRY, YOLANDA PERRY, ALEXANDER ROAD ASSOCIATION, INC., ANTHONY VULPONE, ESTATE OF ANTHONY VULPONE, ROBERT ANTALOCY, THOMAS HARRIS, DOLORES A. KORZ, JOHN P. KILDUFF, KENNETH LEE d/b/a "I CAN GET IT FOR YOU WHOLESALE", SALLIE E. HARMON, PAUL RUGGERIO, MICHELLE RUGGERIO, TERRANCE DONNARY, ANDREW PERNA, KAREN PERNA, ROBERT McMAHON, CARL McMAHON, KELVIN M. LEWIS, MARCHELLE KIRBY, JHON GORDON, RUTH MONROE, EDWARD R. MATEO, ROSANN P. MATEO, ADAM DORAN, NICOLE DORAN, CREDENCE DEVELOPMENT, INC., RICHARD DELISI, ADELAIDE FAULKNER, PAUL ESPEL, CAROL ESPEL, DAWN FORNOFF, RICHARD BURTON, GARY MARINA, and JOHN DOE NO. "1" through "10", inclusive, the names of the last ten defendants being ficticous, the true names being unknown to plaintiff, the parties intended being those having an ownership interest in property effected by a certain easement described in the complaint,**

*Defendants.*

----------------------------------------------------------------------x

Civil Action No.:
07-CV-5739 (KMK)

ECF CASE

**DECLARATION OF LEWIS PERRY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I, Lewis Perry, being duly sworn, depose and say:

1. I am a named Defendant in the above referenced matter. I am fully familiar with the facts set forth herein and submit this declaration pursuant to 28 U.S.C. § 1746 in support of the Motion for Summary Judgment made by Defendants Lewis Perry and Yolanda Perry (the "Perrys"), Alexander Road Association, Inc. ("ARA"), Edward R. Mateo and Rosann P. Mateo (the "Mateos"), Adam Doran and Nicole

Doran (the "Dorans"), Credence Development, Inc. ("Credence") and Richard Delisi ("Delisi") (collectively the "Responding Defendants").

2. On April 1, 1973 I purchased the real property located at Section 58, Block 2, Lot 11.22 in the Town of Warwick, County of Orange and commonly known as 125 Alexander Road, Monroe, New York. On April 15, 1981 I transferred my interest in this property from myself to myself and my wife, Yolanda Perry.

3. On or about June 4, 1993, I, along with my wife, refinanced our mortgage on 125 Alexander Road. Attached to this Declaration as Exhibit "A" is a true and correct copy of a title report pertaining to our property prepared by C.T.I. Abstract Corp for the mortgage loan transaction.

4. Contained in said title report is copy of the 1949 Lillian Alexander Grant from Lillian Alexander to Home Gas Company, the predecessor in interest to Columbia Gas Company ("Columbia Gas") (although different in format from Plaintiff's copy annexed to its Complaint as Exhibit "A").

5. My ownership of my property, and subsequently that of my wife, has always been burdened by this grant, which I was aware of when I first purchased the property at 125 Alexander Road.

6. From the inception of my ownership of 125 Alexander Road, the dimension of the easement granted to Home Gas Company has never been specified in writing, but such has never been an issue until now. Home Gas Company, and its successor Columbia Gas, cleared the easement area of trees, maintained the easement area for use and have never taken more area or used less area since the date of my ownership of my property.

7. I have never seen documentation supporting the position that the Lillian Alexander Grant provided a defined easement; in fact, as evident in my survey included in Exhibit "A", the easement, although recognized, is not defined.

8. I have never received notification prior to this matter, be it verbal or in writing, that Columbia Gas maintained a right over any additional portion of my property other than that which was, and has been, continuously used by Columbia Gas and its predecessor, Home Gas Company.

9. The area affected by the easement at 125 Alexander Road runs along 449.57 feet of my property line. I have measured, at various points, the easement area used over time by Columbia Gas: the easement area measures 14.5 feet, 17.5 feet at three separate locations, 21 feet and 24.5 feet at its widest (where Trout Brook crosses the property line) for an average of 19 feet along my property line. These dimensions are the area of the easement defined by my use and that of Columbia Gas from the inception of my ownership of my property to the present date.

10. The impact of the approximately 19 feet of cleared easement area along my property line has always been the same: it has affected the value of my property, prohibited my use and/or development of my property, as well as created safety, ecological and environmental concerns. In particular, my surrounding property is undeveloped forest, which I and my wife use and enjoy for walks, quiet prayers, wading, mountain biking, bird and wildlife watching (bears, red foxes, wild turkeys, gophers, deer, and the like).

12. Consistently throughout my ownership of my property, Columbia Gas has maintained this recognized easement area. The only notices from Columbia Gas that I received did not pertain to easement dimension but rather anticipated gas ventilations, surveys, installation of cathodic protection cables to protect the pipeline and installation of a pumping device.

13. The first time I became aware that the easement which burdens my property was "defined" was when the same was asserted by Mr. Ken Geltman, Right of Way Agent for Columbia Gas, to be fifty (50) feet. I was aware of the Millennium Pipeline Project since 1997. On January 19, 2007 Mr. Geltman of Columbia Gas met with me and other members of the Alexander Road Association (ARA). Mr. Geltman stated that Columbia Gas was a fifty (50) foot right of way affecting my property and Alexander Road by the Lillian Alexander Grant.

14. I, along with everyone else present at this meeting, expressed our belief that Mr. Geltman and Columbia Gas were wrong in their assertion, and that the Lillian Alexander Grant did not convey rights of specified dimension. I was told by Mr. Geltman that Columbia Gas disagreed, and would enforce its rights, although I would be compensated for stumpage for trees removed from my property. I was further informed that my property would be re-seeded but that no removed trees would be replaced and that all property owners would be compensated for any temporary construction licenses. Finally, road crossings on Alexander Road would be restored to previous or better condition by Columbia Gas.

15. When asked who would bear the costs of all the damages contemplated by Columbia Gas' anticipated activity and any legal fees resultant therefrom, Mr. Geltman stated that Columbia Gas, pursuant to the Lillian Alexander Grant, would bear all legal fees incurred.

16. These statements from Mr. Geltman concerning Columbia Gas' belief that it maintained a fifty (50) foot easement right and its anticipated damage and disruption to my property came as a complete shock to my wife and me. Not only was such a position contrary to the consistent use and interpretation of the easement by Columbia Gas since I first purchased my property, the anticipated activity and temporary construction area would affect a substantial area on my property rendering it unsightly and unsafe with large hazardous equipment and open trenches. A larger swath of area barren of trees would now become a permanent part of my property.

If, in its work, Columbia Gas does not remove its current A-5 pipeline but rather leaves the same, my property may now have increased environmental concerns.

17. The statements of Mr. Geltman contradicted those made by Mr. Humphreys, a site inspector for Columbia Gas, who met with me and other property owners affected by the Millennium Pipeline Project on August 1, 2007. In discussing the impact of the planned development, Mr. Humphreys clearly indicated that, due to the topography and location of residences, the "required" fifty (50) feet of easement would, or could, be less than fifty (50) feet.

18. It is my belief that Columbia Gas asserts that it has an easement right of fifty (50) feet to comply with the Federal Energy Regulatory Commission ("FERC") approval of the Millennium Pipeline Project, although such assertion is contrary to the Lillian Alexander Grant and inconsistent with Columbia Gas' use of its easement rights and my use of my property since I acquired my property.

19. For years my wife and I adjusted to and accepted the fact that our property was burdened by a 12 inch pipeline carrying volatile natural gas a few feet below the surface of the ground. We have learned to live with our original concerns over the pipeline yet use and enjoy all that our property has to offer us, as the dimensions of this easement, its risks and detriment, have never changed. Now, with Columbia Gas asserting that it has rights over substantially more area of my property and with its plans to install a 30 inch additional pipeline, my wife and I not only have property

taken from us but are given more concern. Trout Brook, which intersects the pipeline, will be interrupted or diverted thus impacting topography; clearing will cause soil erosion on inclines due to uninterrupted water run-off and the unpaved portion of Alexander Road will have an even greater drainage problem.

20. Since purchasing my property in 1973, I have been involved with the maintenance of Alexander Road, a private road which is the only ingress/egress servicing residents of Alexander Road and which intersects with Old Dutch Hollow Road, the latter dedicated to the Town of Warwick.

21. Since 1975, residents along Alexander Road contributed to Greenwood Lake Acres Association to fund snow removal from and maintenance of Alexander Road. From that time to present, Alexander Road has been so maintained.

22. On January 22, 1997, the Alexander Road Association (ARA) was "officially" incorporated to succeed Greenwood Lake Acres Association in the maintenance and care of Alexander Road. I have been an officer of ARA since its inception, and am currently President.

23. ARA's ownership of Alexander Road has never been questioned. Subsequent to petition made in 1971 to the Town of Warwick for Alexander Road to be a dedicated road, which petition was denied, Alexander Road has always been used and maintained by ARA or its predecessor-in-interest.

24. Currently, ARA expends in excess of $15,000.00 annually for snow removal and repair of Alexander Road.

25. Columbia Gas has consistently recognized ARA's ownership interest in Alexander Road. In fact, in 1994 I wrote to Columbia Gas on behalf of ARA describing the concern over Columbia Gas' pipeline as the same intersects Alexander Road. In said correspondence, I requested Columbia Gas contribute to ARA toward the cost Alexander Road's maintenance, as the same would benefit Columbia Gas and affected homeowners. A true and correct copy of this May 25, 1994 correspondence is attached as Exhibit "B".

26. In response to this request for support in maintaining Alexander Road, Columbia Gas remitted $150.00 to ARA, which was the equivalent of the annual association fees for homeowners. A true and correct copy of Columbia Gas' correspondence of September 14, 1994 is attached as Exhibit "C".

27. In response to similar requests in 1997 and 1998, Columbia Gas continued to contribute to ARA in support of its maintenance and repair of Alexander Road.

28. Since 1973, no other person or entity other than the homeowners' associations that maintained Alexander Road (with ARA the current entity) has claimed ownership interest in or affecting Alexander Road. ARA's interest in Alexander

Road has been continuous, open and notorious, and has never been questioned by any authority or other entity. Columbia Gas has never questioned ARA's ownership rights to Alexander Road; to the contrary, over time they have contributed to ARA.

29. As there has never been a competing interest for Alexander Road, and due to the expense that would be incurred to quiet title to the same in the name of ARA, ARA has not proceeded to do the same.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of May 2008.

Lewis Perry

Sworn to before me this 12th
day of May 2008

Notary Public

STUART NAHAS
Notary Public, State of New York
No. 02NA5026737
Qualified in New York County
Commission Expires April 25, ~~19~~ 2010

*Sen/2007-16/Declaration of Lewis Perry in Support of Motion for Summary Judgment*

NOTICE OF ENTRY

PLEASE take notice that the within is a (*certified*) true copy of a duly entered in the office of the clerk of the within named court on

Dated,

Yours, etc.

ZRAICK, NAHAS & RICH

*Attorney(s) for*

*Office and Post Office Address*

303 FIFTH AVENUE

BOROUGH OF MANHATTAN NEW YORK, N.Y. 10016

To

Attorney(s) for

NOTICE OF SETTLEMENT

PLEASE take notice that an order

of which the within is a true copy will be presented for settlement to the Hon.

one of the judges of the within named Court, at

on

at M.

Dated,

Yours, etc.

ZRAICK, NAHAS & RICH

*Attorney(s) for*

*Office and Post Office Address*

303 FIFTH AVENUE

BOROUGH OF MANHATTAN NEW YORK, N.Y. 10016

To

Attorney(s) for

Civil Action No.: 07-CV-5739 (KMK)

Index No. Year

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COLUMBIA GAS TRANSMISSION CORPORATION,

Plaintiff,

-against-

LEWIS PERRY, et. al.

Defendants.

DECLARATION OF
LEWIS PERRY IN
SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

Signature (Rule 130-1.1-a)

Print name beneath

ZRAICK, NAHAS & RICH

*Attorney(s) for* Defendants

*Office and Post Office Address, Telephone*

303 FIFTH AVENUE

BOROUGH OF MANHATTAN NEW YORK, N.Y. 10016

MURRAY HILL 6-0855

To

Attorney(s) for

Service of a copy of the within is hereby admitted.

Dated,

..................................................

Attorney(s) for