UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

COLUMBIA GAS TRANSMISSION CORPORATION,

                              *Plaintiff,*

          -against-

**LEWIS PERRY, YOLANDA PERRY, ALEXANDER
ROAD ASSOCIATION, INC., ANTHONY VULPONE,
ESTATE OF ANTHONY VULPONE, ROBERT
ANTALOCY, THOMAS HARRIS, DOLORES
A. KORZ, JOHN P. KILDUFF, KENNETH LEE d/b/a
"I CAN GET IT FOR YOU WHOLESALE", SALLIE
E. HARMON, PAUL RUGGERIO, MICHELLE
RUGGERIO, TERRANCE DONNARY, ANDREW PERNA,
KAREN PERNA, ROBERT McMAHON, CARL McMAHON,
KELVIN M. LEWIS, MARCHELLE KIRBY, JHON
GORDON, RUTH MONROE, EDWARD R. MATEO,
ROSANN P. MATEO, ADAM DORAN, NICOLE DORAN,
CREDENCE DEVELOPMENT, INC., RICHARD DELISI,
ADELAIDE FAULKNER, PAUL ESPEL, CAROL ESPEL,
DAWN FORNOFF, RICHARD BURTON, GARY MARINA,
and JOHN DOE NO. "1" through "10", inclusive, the names
of the last ten defendants being ficticous, the true names
being unknown to plaintiff, the parties intended being
those having an ownership interest in property effected
by a certain easement described in the complaint,**

                              *Defendants.*

-------------------------------------------------------------------------x

Civil Action No.:
07-CV-5739 (KMK)

ECF CASE

**DECLARATION OF
ADAM DORAN IN
SUPPORT OF MOTION
FOR SUMMARY
JUDGMENT**

      I, Adam Doran, being duly sworn, depose and say:

1.    I am a named Defendant in the above referenced matter.  I am fully familiar

with the facts set forth herein and submit this declaration pursuant to 28 U.S.C. §

1746 in support of the Motion for Summary Judgment made by Defendants Lewis

Perry and Yolanda Perry (the "Perrys"), Alexander Road Association, Inc. ("ARA"),

Edward R. Mateo and Rosann P. Mateo (the "Mateos"), Adam Doran and Nicole

Doran (the "Dorans"), Credence Development, Inc. ("Credence") and Richard Delisi ("Delisi") (collectively the "Responding Defendants").

2.     On June 14, 2005 I, along with my wife Nicole Doran, purchased the real property located at Section 60, Block 3, Lot 5.2 in the Town of Warwick, County of Orange and commonly known as 146 Alexander Road, Monroe, New York.

3.     Prior to our purchase, my wife and I were informed by our realtor that a pipeline existed and affected an adjacent property but did not intersect our property.

4.     In preparation for our purchase we received a title report from Chicago Title Insurance Company.  Said report, which contained a survey, confirmed to us that our property was not affected by any gas pipeline.  As we learned prior to and at our closing for the purchase of 146 Alexander Road, the existing pipeline runs on a diagonal adjacent to our property but does not enter our property.

5.     My ownership of my property, and that of my wife, has never been burdened by the 1949 Lillian Alexander Grant from Lillian Alexander to Home Gas Company or its successor in interest, Columbia Gas Company ("Columbia Gas").

6.     From the inception of my ownership of 146 Alexander Road the dimension of the easement granted to Home Gas Company has never been specified in writing, but such lack of specificity has never been an issue.  Home Gas Company and its

2

successor, Columbia Gas, maintained the easement area for use and have never taken more area or used less area. There exists an eight (8) foot fence that runs along our property line and it separates our property from the adjacent property that is burdened by the easement.

7.     I have never seen documentation supporting the position that the Lillian Alexander Grant provided a defined easement. Throughout the ownership of my property the easement has been recognized by its use alone, and is not defined by any writing.

8.     Prior to its assertion, the subject of this lawsuit, that Columbia Gas has rights over my property, I had no notice of any such alleged rights, whether verbal or in writing, as the pipeline does not transverse any portion of my property and the Lillian Alexander Grant does not burden my property.

9.     In particular, as the same affects my property at 146 Alexander Road, the existing pipeline is at least Twenty-Five (25) feet from my property line at the nearest point, which is at the back end of my property where the same is adjacent to the property that is burdened by the easement. These dimensions have not changed from the inception of my property ownership to the present date.

10.    The first time I became aware of the Millennium Pipeline Project and the assertion that the easement might burden my property was in November of 2006

3

when Mr. Ken Geltman, Right of Way Agent for Columbia Gas, left a business card at my home asking me and my wife to contact him concerning the impact of the Millennium Pipeline Project.

11.    My wife and I promptly arranged a meeting with Mr. Geltman. He informed us about the Millennium Pipeline project and Columbia Gas' request for a temporary construction license based on the Lillian Alexander Grant. My wife and I were provided a very crude map and were told that the area of our property to be taken by Columbia Gas was a strip of land several feet along our side of the fence which divides our property from the adjacent property burdened by the easement. We were assured that the Millennium Pipeline Project would cause little impact to our property ownership and were asked to sign a prepared temporary license to Columbia Gas in exchange for a $500.00 payment in compensation.

12.    In particular, my wife and I were informed that if the temporary license was executed, then the anticipated impact to our property would be such that no mature trees would be removed, our driveway and retaining wall would be unaffected and that Columbia Gas would "buy" our duck shed if the shed had to be removed. Further, Mr. Geltman represented that Columbia Gas would perform well pressure tests and septic dye tests before and after construction to insure that our property was affected or polluted by Columbia Gas' construction activities.

4

13.    At this meeting, Mr. Geltman did not provide me with the exact location of the existing pipeline or actual measurements for the anticipated construction, although such information was requested from him in order to properly consider Columbia Gas' request for a temporary license.

14.    Subsequently, my wife and I met with the Mateos, owners of the adjacent property burdened by the easement, to discuss Mr. Geltman's proposal, the Millennium Pipeline Project, and review a survey of their property.

15.    At this meeting with the Mateos, wherein my wife and I compared our property survey with that of the Mateos' property, I discovered a large discrepancy in what had been presented to me and my wife by Columbia Gas' representative. The area envisioned by the temporary license drafted by Columbia Gas contained a Twenty-Five (25) foot construction area; such an area would, in fact, severely impact to my property, including a large area of my front yard.

16.    Subsequently, on or about January 12, 2007, I contacted Mr. Jerry Humphrey, the Right of Way Manager for the Millennium Pipeline Project and requested an accurate map that delineated Columbia Gas' proposed work area. In response to the same, I received the same rudimentary map previously provided to me by Mr. Geltman.

5

17.    On or about January 15, 2007, I forwarded to Mr. Geltman copies of surveys for our and the Mateos' properties and questioned him concerning the discrepancies between his rude map and our surveys regarding the description of my property that would be affected by Columbia Gas' requested Twenty-Five (25) feet of construction area. In response to my request, Mr. Geltman advised me that I was mistaken and that there were no discrepancies from what he previously asserted on behalf of Columbia Gas to be the impact to my property or the area to be affected.

18.    In my correspondence with Mr. Geltman, I requested that Columbia Gas survey my property and ascertain which mature trees might be felled by its anticipated work and have the same identified in order for my wife and I to understand the affect to our property. Mr. Geltman stated that my survey request could be provided.

19.    Subsequently on or about February 16, 2007, Mr. Geltman asked my wife and me for permission to access our property to perform a survey. Believing the same to be in response to our previous request for accurate information, my wife and I granted permission to access our property to Columbia Gas on February 19, 2007.

20.    On or about March 28, 2007 I contacted Mr. Geltman, again requesting a survey (which I believed had been performed) so that my wife and I could have accurate information concerning the impact to our property of Columbia Gas' anticipated construction. In addition, I inquired directly concerning any costs that I

6

might incur as a consequence of Columbia Gas' activities, particularly attorney's fees if my wife and I chose to retain counsel to negotiate the temporary license requested by Columbia Gas. Mr. Geltman told me (and confirmed the same via e-mail) it would not be until summer that Columbia Gas could respond to my survey request (although it was my belief I had already granted permission to access my property for said survey) and I was assured that Columbia Gas would reimburse my wife and I for any attorney's fees attendant to this matter.

21.    The next contact my wife or I had with Columbia Gas, or any of its representatives concerning its request for a temporary license to access and affect our property was on June 28, 2007, when my wife and I were served with the Summons and Complaint in this matter.

22.    Upon review of the Summons and Complaint, my wife and I learned that Columbia Gas was seeking to take more of our property than what it had previously stated. Contrary to the represented "minimal impact" to my property, Columbia Gas is in fact seeking a twenty-five (25) foot right of way that runs with the land along both sides of the existing pipeline, for a total easement of fifty (50) feet in width for the length of the existing pipeline. Further, Columbia Gas asserted that inherent to its rights is an additional "right of way" grant expanding its easement to Seventy-Five (75) to One Hundred and Fifty (150) feet in total width during times of construction and the performance of major work.

7

23.    Columbia Gas' alleged additional right of way would encompass approximately 25% of my property; require the removal of many mature trees and my water well; block my driveway; require the dismantling of my retaining wall; require the removal of my duck shed; limit the use of my garage and the entrance to my home and destroy landscaping.

24.    The allegations contained in Columbia Gas' Summons and Complaint grounded in its assertion that it maintains a fifty (50) foot easement right and an additional "right of way" grant expanding its easement to Seventy-Five (75) to One Hundred and Fifty (150) feet in total width during times of construction and the performance of major work came as a complete shock to my wife and me. Not only was such a position contrary to the previous representations of Columbia Gas' representatives, the anticipated activity and temporary construction area would create a material and substantial intrusion on my property. This work would not have a "minimal impact" to my property, as represented, but rather will encompass approximately 25% of my property; require the removal of many mature trees and my water well; block my driveway; require the dismantling of my retaining wall; require the removal of my duck shed; limit the use of my garage and the entrance to my home and destroy landscaping.

25.    Adding "insult to injury", by being named a party defendant and served with Columbia Gas' Summons and Complaint, my wife and I have had to retain counsel

8

to defend against Columbia Gas' attempt to affect our property without any recognized or recorded right to do so. It is my opinion that Columbia Gas asserts that it has these alleged easement rights in respect of my property to comply with the Federal Energy Regulatory Commission ("FERC") approval of its Millennium Pipeline Project, although the Lillian Alexander Grant, and whatever rights contained therein, do not burden my property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of May 2008.

Adam Doran

Sworn to before me this 12th
day of May 2008

Notary Public

STUART NAHAS
Notary Public, State of New York
No. 02NA5026737
Qualified in New York County
Commission Expires April 25, 19 2010

*Sen/2007-16/Declaration of Adam Doran in Support of Motion for Summary Judgment*

9

Civil Action No.: 07-CV-5739 (KMK)

Index No.                              Year

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COLUMBIA GAS TRANSMISSION CORPORATION,

Plaintiff,

-against-

LEWIS PERRY, et. al.

Defendants.

DECLARATION OF
ADAM DORAN IN
SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

Signature (Rule 130-1.1-a)

Print name beneath

ZRAICK, NAHAS & RICH

Attorney(s) for   Defendants

Office and Post Office Address, Telephone
303 FIFTH AVENUE
BOROUGH OF MANHATTAN      NEW YORK, N.Y. 10016
MURRAY HILL 6-0855

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated,

Attorney(s) for

---

PLEASE take notice that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within
named court on

Dated,

Yours, etc.

ZRAICK, NAHAS & RICH

Attorney(s) for

Office and Post Office Address
303 FIFTH AVENUE
BOROUGH OF MANHATTAN      NEW YORK, N.Y. 10016

To

Attorney(s) for

NOTICE OF ENTRY

PLEASE take notice that an order
of which the within is a true copy will be presented
for settlement to the Hon.
one of the judges of the within named Court, at
on
at
Dated,          M.

Yours, etc.

ZRAICK, NAHAS & RICH

Attorney(s) for

Office and Post Office Address
303 FIFTH AVENUE
BOROUGH OF MANHATTAN      NEW YORK, N.Y. 10016

To

Attorney(s) for

NOTICE OF SETTLEMENT