LAKE DECLARATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION CORPORATION, | Civil Action No. 07 cv 5739 (KMK) ECF CASE |
| Plaintiff, | |
| - against - | |
| LEWIS PERRY, YOLANDA PERRY, ALEXANDER ROAD ASSOCIATION, INC., ANTHONY VULPONE, ESTATE OF ANTHONY VULPONE, ROBERT ANTALOCY, THOMAS HARRIS, DOLORES A. KORZ, JOHN P. KILDUFF, KENNETH LEE d/b/a "I CAN GET IT FOR YOU WHOLESALE", SALLIE E. HARMON, PAUL RUGGIERO, MICHELLE RUGGIERO, TERRANCE DONNARY, ANDREW PERNA, KAREN PERNA, ROBERT McMAHON, CARL McMAHON, KELVIN M. LEWIS, MARCHELLE KIRBY, JHON GORDON, RUTH MONROE, EDWARD R. MATEO, ROSANN P. MATEO, ADAM DORAN, NICOLE DORAN, CREDENCE DEVELOPMENT INC., RICHARD DELISI, ADELAIDE FAULKNER, PAUL ESPEL, CAROL ESPEL, DAWN FORNOFF, RICHARD BURTON, GARY MARINA, and JOHN DOE NO. "1" through "10" inclusive, the names of the last ten defendants being fictitious, the true names being unknown to plaintiff, the parties intended being those having an ownership interest in property effected by a certain easement described in the complaint, | **DECLARATION IN SUPPORT OF SUMMARY JUDGMENT** |
| Defendants. | |

------------------------------------------------------------X

ANDREW G. LAKE, declares under penalty of perjury:

1.    I am an Operations Manager employed by Columbia Gas Transmission Corporation ("Columbia"), the plaintiff in this action. I am fully familiar with the facts set forth herein, and submit this declaration, pursuant to 28 U.S.C. § 1746, in support of Columbia's instant application for summary judgment on its claim seeking an adjudication that the width of Columbia's easement affecting defendant-landowners' property is, at a minimum, fifty feet

(twenty-five feet on either side of the pipeline), which is the reasonable and necessary width to effectuate the purpose of the granted easement.

## INTRODUCTION

2. Columbia owns and operates natural gas pipelines throughout the State of New York and elsewhere. Since 1949, Columbia has possessed an easement that allows it and its assigns ingress, egress and regress in order to, *inter alia*, remove, change, maintain, operate and lay a natural gas pipeline across the properties now owned by, among others, Lewis Perry, Yolanda Perry, Alexander Road Association, Inc., Edward Mateo, Rosann Mateo, Richard Delisi, Adam Doran, Nicole Doran, and Creedence Development, Inc. ("Responding Defendants").

3. While the grant of rights under the 1949 easement does not define the width of the permanent right-of-way, the reasonable and necessary width in order to effectuate the granted rights under the easement is fifty feet (twenty-five feet on either side of the pipeline). This determination takes in to account Columbia's compliance with various Federal statutes, as well as the practicalities of how quickly a twenty-five foot space on either side of a pipeline gets allocated in case the pipeline has to be accessed. This width also takes into account safety concerns, which is paramount, for Columbia's employees, Responding Defendants and the public at large. Moreover, Responding Defendants each purchased their properties subject to the rights granted in the easement and Columbia has been protecting this fifty-foot swath of land since before Responding Defendants even purchased their properties.

4. Accordingly, Columbia's instant application should be granted in its entirety.

## THE EASEMENT

5. In 1949, Home Gas Company, predecessor-in-interest to Columbia, obtained from Lillian A. Alexander, Responding Defendants' predecessor-in-interest, an easement across certain property to lay, maintain, operate, repair, change and remove a natural gas pipeline with ingress and egress to the same (the "Easement"). A copy of the Easement is annexed hereto as Exhibit A. The grant also included the right, at any time, to lay a second line upon the same

terms and conditions as the initial lay. The Easement was duly recorded among the land records of the Office of the Orange County Clerk on August 30, 1949, in Liber 1140, at Page 119. Lillian A. Alexander's property was subsequently subdivided into various plots, and the subdivisions that are subject to Columbia's Easement are owned by, among others, Responding Defendants.

6.  Indeed, the rights granted under the Easement are explicit. No one need look beyond the face of the instrument to discern that the intended grant of rights was for, *inter alia*, the maintenance and operation of a natural gas pipeline. The pipeline that Columbia operates is a transmission line. The line transmits large volumes of natural gas across the state for ultimate consumption by residential and commercial users. The natural gas is transmitted under significant pressure.

## REASONABLE & NECESSARY

7.  Columbia must maintain and operate the natural gas pipeline in accordance with applicable federal and state laws and regulations, as well as other applicable safety standards. In fact, Columbia must be able to readily locate and access the pipeline, to inspect the pipeline, and be able to take all steps necessary to allow early detection of leaks with the concomitant ability to take rapid corrective actions if required. Delays in this regard can result in catastrophic failures which could jeopardize public safety.

8.  Among other activities, Columbia personnel periodically perform a variety of tests on its natural gas pipelines and attendant facilities which require unobstructed access to its various lines. Operation and maintenance of a natural gas pipeline also requires routine inspections across the right-of-way by Columbia's crews and agents and, as a result, access to these right-of-ways cannot be restricted or obstructed, in any way, by the subservient landowners.

9.  This distance allows Columbia crews and agents, *inter alia*, to inspect for and detect gas leaks and perform other safety related inspections. It also allows for normal operational and maintenance activities to be performed, while providing for safe personnel,

vehicular and equipment traffic along either side of the natural gas pipeline. Indeed, crossing high-pressure pipelines with heavy equipment may cause undue mechanical stress on a pipeline and could lead to pipe failures.

10. This distance also provides a sufficient perimeter of protection from unauthorized excavations, encroachments or grade manipulation around or near the pipeline that may further endanger public safety. If someone digs too close to the pipeline, the pipeline itself may be damaged, the excavation (or even the placement of additional fill) may sufficiently change the grade of the land that makes location of the pipeline more difficult in case of an emergency, hinders vehicular access to the pipeline, and grade manipulation could cause sink holes or landslides – both of which can cause damage to a pipeline or the protective coating which prevents pipeline corrosion.

11. In order to safeguard against these, and other like, events as well as comply with other applicable safety and maintenance regulations, Columbia maintains and keeps clear an approximate twenty-five (25) foot wide area on both sides of its pipeline. This fifty (50) foot area Columbia requires is the reasonable and necessary width for it to comply, in the ordinary course of its business, with all applicable laws and to appropriately enjoy the rights and uses granted under the Easement.

12. In this regard, in instances when Columbia must access its line, employees need to excavate over, around and under the pipeline – pipelines usually have 3 to 5 feet of cover. But when accessing a pipeline, Columbia must comply with various rules and regulations. Indeed, OSHA sets forth minimum standards that need to be adhered to for safe excavation and trenching.

13. Specifically, in order to prevent cave-ins and ensure safe ingress and egress to the trench, trenches are sloped pursuant to a formula that takes into consideration, among other things, depth of the trench and soil type. Different soil types require different minimum rise-to-run ratios ranging from 1:¾ ratio to 1: 1 ½ ratio.

14. For example, a 30 inch pipeline with 3 1/2 feet of cover will require a 4 foot trench floor, six feet deep. Even at a 1:1 rise-to-run ratio, the minimum required trench opening is sixteen feet (4 foot trench bottom plus 6 feet wide sloped walls on each side of the trench). Next, nothing is to be placed within 2 feet of the edge of the trench opening (neither spoil nor equipment) as a precaution against cave-ins. Consequently, the twenty-five feet on either side of the pipeline, is now reduced to 15 feet.

15. The next consideration for Columbia is the spoil – which is the earth removed from the excavation site to make the trench. The spoil must remain within the boundaries of the right-of-way. Thus, the spoil is forced to occupy the other side of the trench opening, is to be piled in a certain sloped manner and Columbia may be required to segregate the top soil from the subsoil – all within the right-of-way.

16. Finally, on the work-side of trench, the remaining 15 feet has to accommodate a work space for employees, an equipment lane for vehicles, and if Columbia is required to perform topsoil conservation on the working side of the pipeline, an area would have to be allocated for that soil as well. Plus, if two vehicles had to pass each other, 15 feet is a very tight lane within which to do so – even without this space being limited by work area or topsoil conservation needs. Twenty-five feet simply is not very much. Exhibit B is a diagram showing the allocation of the fifty feet, as well as relevant equipment widths.

17. This is why Columbia considers this fifty (50) foot width to be its permanent right of way across the properties (the "Permanent ROW") and, as Responding Defendants are aware, has long protected this area from any encroachments – requiring the landowners to obtain Columbia's permission before allowing any decks, fencing or other encroachments from being placed within this fifty-foot area. Pictures of the Permanent ROW are annexed hereto as Exhibit C. These pictures were taken Fall 2007.

18. Again, Columbia's only interest in maintaining a 50 foot right-of-way is safety and service. The maintenance of a right-of-way is a cost to Columbia – there is no benefit to maintaining more than what is needed to properly and safely operate the gas pipeline.

**WHEREFORE**, it is respectfully requested that this Court grant Columbia's motion in its entirety, deny Responding Defendants motion in all respects and granting Columbia such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 14, 2008.

                                                                                        _____
                                                                                               Andrew G. Lake