Scott S. McKessy (SM-5489)
REED SMITH LLP
599 Lexington Avenue
New York, New York  10022
(212) 521-5400

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

COLUMBIA GAS TRANSMISSION                 :        Civil Action No. 07 cv 5739 (KMK)
CORPORATION,                                                            ECF CASE
                                                                 :
                                        Plaintiff,
                                                                 :

        - against -
                                                                 :
LEWIS PERRY, YOLANDA PERRY,
ALEXANDER ROAD ASSOCIATION, INC.,         :
ANTHONY VULPONE, ESTATE OF ANTHONY
VULPONE, ROBERT ANTALOCY,                 :
THOMAS HARRIS, DOLORES A. KORZ,
JOHN P. KILDUFF, KENNETH LEE d/b/a        :
"I CAN GET IT FOR YOU WHOLESALE",
SALLIE E. HARMON, PAUL RUGGIERO,          :
MICHELLE RUGGIERO, TERRANCE
DONNARY, ANDREW PERNA, KAREN              :
PERNA, ROBERT McMAHON, CARL
McMAHON, KELVIN M. LEWIS, MARCHELLE       :
KIRBY, JHON GORDON, RUTH MONROE,
EDWARD R. MATEO, ROSANN P. MATEO,         :
ADAM DORAN, NICOLE DORAN, CREDENCE
DEVELOPMENT INC., RICHARD DELISI,         :
ADELAIDE FAULKNER, PAUL ESPEL,
CAROL ESPEL, DAWN FORNOFF, RICHARD        :
BURTON, GARY MARINA, and JOHN DOE
NO. "1" through "10" inclusive, the names of the   :
last ten defendants being fictitious, the true names
being unknown to plaintiff, the parties intended   :
being those having an ownership interest in
property effected by a certain easement described  :
in the complaint,
                                                                 :
                                        Defendants.
-------------------------------------------------------------X


**PLAINTIFF'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

Plaintiff Columbia Gas Transmission Corporation ("Columbia"), pursuant to Local Civil Rule 56.1(a), submits the following statement of material facts as to which Columbia contends there is no genuine issue to be tried:

1.      Columbia owns and operates natural gas pipelines throughout the State of New York and elsewhere.  *See* Declaration of Andrew G. Lake dated May 14, 2008, paragraph 2 (Lake Decl, ¶2).

2.      Columbia owns and operates interstate national gas pipelines pursuant to certificates of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC").  *See* Complaint, ¶ 33

3.      Since 1949, Columbia has possessed an easement ("the Easement") that allows it and its assigns ingress, egress and regress in order to, *inter alia*, remove, change, maintain, operate and lay a natural gas pipeline across the properties now owned by, among others, Lewis Perry, Yolanda Perry, Alexander Road Association, Inc., Edward Mateo, Rosann Mateo, Richard Delisi, Adam Doran, Nicole Doran, and Creedence Development, Inc. ("Responding Defendants").  *See* Lake Decl, ¶2; Answer ¶¶1 and 75.

4.      The grant in the Easement also included the right, at any time, to lay a second line upon the same terms and conditions as the initial lay.  *See* Lake Decl, ¶5; *See* Easement (Exhibit A to the Lake Decl.)

5.      The Easement was duly recorded among the land records of the Office of the Orange County Clerk on August 30, 1949, in Liber 1140, at Page 119.  *See* Lake Decl; ¶5 *See* Easement (Exhibit A to the Lake Decl.)

6.      In accordance with the terms of the Easement, a natural gas pipeline was constructed across the relevant property and became subject to the authority of FERC in 1979, upon the establishment thereof, pursuant to FERC order 6 F.E.R.C. P61, 123.  *See* Complaint ¶36.

7.      The Pipeline transmits large volumes of natural gas across the state for ultimate consumption by residential and commercial users.  *See* Lake Decl, ¶6

8.      The natural gas is transmitted through the Pipeline under significant pressure.  *See* Lake Decl, ¶6

9.      Columbia must maintain and operate the Pipeline in accordance with applicable federal and state laws and regulations, as well as other applicable safety standards.  *See* Lake Decl, ¶7

10.      To effect Columbia's rights granted under the Easement to, *inter alia*, maintain and operate a natural gas pipeline, Responding Defendants' safety must be considered. *See* Lake Decl, ¶3

11.      To effect Columbia's rights granted under the Easement to, *inter alia*, maintain and operate a natural gas pipeline, the public's safety must be considered. *See* Lake Decl, ¶3

12.      To effect Columbia's rights granted under the Easement to, *inter alia*, maintain and operate a natural gas pipeline, safety concerns of Columbia's employees must be considered. *See* Lake Decl, ¶3

13.     Columbia must be able to readily locate and access the Pipeline, to inspect the pipeline, and be able to take all steps necessary to allow early detection of leaks with the concomitant ability to take rapid corrective actions if required. *See* Lake Decl, ¶7

14.     Delays in Columbia being able to readily locate and access the Pipeline, to inspect the pipeline, and be able to take all steps necessary to allow early detection of leaks with the concomitant ability to take rapid corrective actions if required can result in catastrophic failures could jeopardize public safety. *See* Lake Decl, ¶7

15.     Columbia requires unobstructed access to its various lines.   *See* Lake Decl, ¶8

16.     In order to operate, inspect, test and maintain the Pipeline, Columbia must maintain an approximate twenty-five (25) foot wide area on both sides of the Pipeline. *See* Lake Decl. ¶¶7-16

17.     Crossing high-pressure natural gas pipelines with heavy equipment may cause undue mechanical stress on a pipeline and could lead to pipe failures. *See* Lake Decl, ¶9

18.     A 25 foot wide area on both sides of a natural gas pipeline provides a sufficient perimeter of protection from unauthorized excavations, encroachments or grade manipulation around or near the pipeline that may further endanger public safety. *See* Lake Decl, ¶10

19.     Excavation too close to a natural gas pipeline may damage the pipeline. *See* Lake Decl, ¶10

20.    Excavation (or even the placement of additional fill) may sufficiently change the grade of the land that makes location of the pipeline more difficult in case of an emergency. *See* Lake Decl, ¶10

21.    Excavation or grade manipulation may hinder vehicular access to the pipeline. *See* Lake Decl, ¶10

22.    Excavation or grade manipulation could cause sink holes or landslides – both of which can cause damage to a pipeline or the protective coating which prevents pipeline corrosion. *See* Lake Decl, ¶10

23.    In instances when Columbia must access one of its natural gas pipelines, employees need to excavate over, around and under the natural gas pipelines, which usually have 3 to 5 feet of cover. *See* Lake Decl, ¶12

24.    When accessing a natural gas pipeline, Columbia must comply with various rules and regulations. *See* Lake Decl, ¶12

25.    In order to prevent cave-ins and ensure safe ingress and egress to the trench, trenches are sloped pursuant to a formula that takes into consideration, among other things, depth of the trench and soil type. *See* Lake Decl, ¶13

26.    Different soil types require different minimum trench rise-to-run ratios ranging from 1:¾ ratio to 1: 1 ½ ratio. *See* Lake Decl, ¶13

27.    Spoil is to be piled in a certain sloped manner and Columbia may be required to segregate the top soil from the subsoil – all within the right-of-way. *See* Lake Decl, ¶15

28.     To properly maintain and operate a natural gas pipeline, Columbia needs work space for employees, an equipment lane for vehicles, and if Columbia is required to perform topsoil conservation on the working side of the pipeline, an area would have to be allocated for that soil as well. *See* Lake Decl, ¶16

29.     Columbia has long protected a fifty (50) foot right-of-way in connection with the Pipeline and the Easement from any encroachments, requiring the landowners to obtain Columbia's permission before allowing any decks, fencing or other encroachments from being placed within this fifty-foot area. *See* Lake Decl, ¶17; Exh. C

30.     Lillian A. Alexander's property was subsequently subdivided into various plots, and the subdivisions that are subject to Columbia's Easement are owned by, among others, Responding Defendants. *See* Lake Decl, ¶5; *See* Answer ¶¶ 54, 62, 78, 79

31.     Responding Defendants each purchased their properties subject to the rights granted in the Easement. *See* Lake Decl, ¶ 3; *See* Answer ¶¶ 78, 79

32.     Columbia has been protecting this fifty-foot swath of land since before Responding Defendants even purchased their properties. *See* Lake Decl, ¶3

Respectfully submitted,

**REED SMITH LLP**

   /s/  Scott S. McKessy
Scott S. McKessy (SM-5489)
599 Lexington Avenue
New York, NY 10022
Telephone:  212.521.5400
*Attorneys for Plaintiff*
*Columbia Gas Transmission Corporation*

-6-