UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION CORPORATION, | : | Civil Action No. 07 cv 5739 (KMK) ECF CASE |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | |
| | : | |
| LEWIS PERRY, YOLANDA PERRY, ALEXANDER ROAD ASSOCIATION, INC., ANTHONY VULPONE, ESTATE OF ANTHONY VULPONE, ROBERT ANTALOCY, THOMAS HARRIS, DOLORES A. KORZ, JOHN P. KILDUFF, KENNETH LEE d/b/a "I CAN GET IT FOR YOU WHOLESALE", SALLIE E. HARMON, PAUL RUGGIERO, MICHELLE RUGGIERO, TERRANCE DONNARY, ANDREW PERNA, KAREN PERNA, ROBERT McMAHON, CARL McMAHON, KELVIN M. LEWIS, MARCHELLE KIRBY, JHON GORDON, RUTH MONROE, EDWARD R. MATEO, ROSANN P. MATEO, ADAM DORAN, NICOLE DORAN, CREDENCE DEVELOPMENT INC., RICHARD DELISI, ADELAIDE FAULKNER, PAUL ESPEL, CAROL ESPEL, DAWN FORNOFF, RICHARD BURTON, GARY MARINA, and JOHN DOE NO. "1" through "10" inclusive, the names of the last ten defendants being ficticous, the true names being unknown to plaintiff, the parties intended being those having an ownership interest in property effected by a certain easement described in the complaint, | : : : : : : : : : : : : | |
| Defendants. | : | |

------------------------------------------------------------X

**PLAINTIFF COLUMBIA GAS TRANSMISSION CORPORATION'S
MEMORANDUM OF LAW IN OPPOSITION TO
CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

REED SMITH
599 Lexington Avenue
New York, New York  10022
212-521-5400

Attorneys for Plaintiff
Columbia Gas Transmission Corporation

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................1

RELEVANT FACTUAL BACKGROUND...........................................................3

    The Grant of the Easement ..........................................................................3

    The Reasonable and Necessary Width of the Easement...................................4

    The Responding Defendants Have Admitted  That They Have
    Always Been Aware That  The Easement Covers 50 Feet At All Times............6

ARGUMENT......................................................................................................9

    POINT I
    THE RESPONDING DEFENDANTS HAVE
    NO BASIS FOR SEEKING SUMMARY JUDGMENT ...................................9

        A.     The Responding Defendants Fail To Even Argue That Anything
                Less Than A 50 Foot Width Is Reasonable and Necessary .....................10

        B.     Responding Defendants' Proposed "Use"
                Test Has No Support In Fact Or Law .......................................................12

    POINT II
    THE RESPONDING DEFENDANTS HAVE
    NO BASIS FOR SEEKING ATTORNEYS' FEES OR COSTS ......................15

CONCLUSION.................................................................................................16

## TABLE OF AUTHORITIES

**Page**

### CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ............. 9

*Cassella v. Gallo,* 197 A.D.3d 825, 189 N.Y.S.2d 531 (3d Dep't 1921) ............................... 13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 196 S. Ct. 2548, 91 L.Ed.2d 265 (1986) ........................ 9

*Columbia Gas Transmission Corp. v. Adams*, 646 N.E. 2d at 926 (Ohio Ct. Com. Pl. 1994)..... 12

*Columbia Gas Transmission Corp. v. Burke*, 768 F. Supp. at 1173 (N.D.W.Va. 1990) .............. 12

*Columbia Gas Transmission Corporation v. Large*, 63 Ohio Misc. 2d 63,
    619 N.E.2d 1215 (Ohio Ct. Com.Pl. 1992) ............................................................................ 11

*Columbia Gas Transmission Corp. v. Savage*, 863 F. Supp. 198, 202 (M.D. Pa. 1994).............. 12

*Columbia Gas Transmission Corporation v. Tarbuck*, 845 F.Supp. 303
    (W.D. Pa. 1994) aff'd 62 F.3d 538 (3d Cir. 1995).............................................................. 11, 12

*Del. & Hudson Railway Co. v. Consol. Rail Corp.*, 902 F.2d 174 (2d Cir. 1990) ...................... 10

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 88 S. Ct. 1575,
    20 L.Ed.2d 569 (1968) ............................................................................................................ 9

*Hooper Assoc's, Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 492,
    548 N.E.2d 903 (N.Y. 1989) .................................................................................................. 15

*Le Sawyer v. Squillace*, 14 A.D.2d 961, 221 N.Y.S.2d 455 (3d Dep't 1961) .............................. 10

*Lund's, Inc. v. Chemical Bank*, 870 F.2d 840 (2d Cir. 1989) ...................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106
    S. Ct. 1348, 89 L.Ed.2d 538 (1986) ....................................................................................... 9

*Oliphant v. McCarthy*, 208 A.D.2d 1079, 617 N.Y.S. 2d 555 (3d Dep't 1994)......................... 14

*Rivlin v. Sigalos*, 9 Misc.2d 373, 172 N.Y.S.2d 882 (Rennselaer Co. Supreme Ct. 1957) .... 14, 15

*Slamow v. Delcol*, 79 N.Y.2d 1016, 584 N.Y.S.2d 424 (1992) ................................................... 10

*Town of Ulster  v. Massa*, 144 A.D.2d 726, 528, 535 N.Y.S.2d 460, 461 (3d Dep't 1988)......... 10

### STATUTES

Fed. R. Civ. P. 56(c) ...................................................................................................................... 9

29 CFR §§ 1926.650, *et seq.* ........................................................................................................ 11

49 CFR §§ 192.601, *et seq.* .......................................................................................................... 11

49 CFR §§ 192.602, *et seq* ........................................................................................................... 11

Plaintiff, Columbia Gas Transmission Corporation ("Columbia"), respectfully submits this Memorandum of Law , along with the accompanying Declaration of Andrew G. Lake, dated June 17, 2008 ("Lake Opp'n Decl."), in opposition to the Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56 (the "Responding Defendants' Motion") filed by defendants Lewis Perry, Yolanda Perry, Alexander Road Association, Inc., Edward Mateo, Rosann Mateo, Richard Delisi, Adam Doran, Nicole Doran, and Credence Development, Inc. ("Responding Defendants").[1]

## PRELIMINARY STATEMENT

The Responding Defendants' Motion should be denied.  The only material facts in this case are (i) the plain text of the 1949 instrument through which Columbia's predecessor-in-interest received an easement across the Responding Defendants' parcels "to lay, maintain, operate, repair, change and remove" a natural gas pipeline; and (ii) the undisputed facts set forth in the Lake Opposition Declaration concerning the amount of space on either side of a natural gas pipeline that is reasonable and necessary to effectuate the purpose of laying, operating, maintaining, repairing, changing, and removing that pipeline.  Because Responding Defendants have not identified any disagreement between the sides concerning either of those issues—and because the uncontested facts favor Columbia in both instances—Responding Defendants Motion for summary judgment should be denied in full.

First, Responding Defendants wisely do not dispute the plain text of the grant of the easement. The 1949 instrument clearly states that the purpose for the granting of the easement is the proper maintenance, operation and safety of a natural gas pipeline.  The easement does not specify the width of Columbia's permanent right-of-way, but instead leaves its width to the

---

[1]    The Responding Defendants' Motion does not specify whether they seek summary judgment with respect to the claims against them, their own Counterclaim for Injunctive Relief, or both.  Because the underlying issues are essentially common to all of those causes of action, this Memorandum of Law presumes that the Responding Defendants' Motion seeks summary judgment as to all Causes of Action brought by Columbia and as to the Counterclaim.

operation of New York law, which provides that the dimensions of an easement are those which are reasonable and necessary to effectuate the rights granted.

Second, the uncontested evidence in the Lake Opposition Declaration demonstrates that a width of twenty-five feet on either side of the pipeline—which is the width Columbia has maintained on the subject properties and within which Columbia has not permitted any alteration or intrusion without its permission—is the minimum width which is reasonable and necessary to permit Columbia to monitor the safety and performance of a vital energy source for much of the eastern seaboard. Responding Defendants do not dispute any of those facts. Despite submitting five (5) separate affidavits, Responding Defendants have not set forth a single factual allegation that a width of less than 50 feet could qualify as "reasonable and necessary."

Responding Defendants do not challenge those facts because they know that they cannot do so. Indeed, their submission to the Court demonstrates that they have long known that the easement is 50 feet wide. In 1992, Responding Defendant Edward R. Mateo wrote to Columbia seeking permission to encroach upon the "easement" (his word) by laying a septic pipe and septic field across a portion of it. Columbia approved that request for permission to he received a response from Columbia approving that limited encroachment of the "Right of Way." Thus, as long as 16 years ago, a Responding Defendant was demonstrably aware that the easement was 50 feet wide.

Even if Mr. Mateo's correspondence with Columbia had not come to light and punctured the Responding Defendants' credibility, they would still have no basis for summary judgment because their motion fails on its very premise: It postulates that Columbia's easement—which was created across an undivided tract of undeveloped forestland held by one owner—now varies in width from subdivided parcel to subdivided parcel. Responding Defendants further postulate that Columbia's easement mutated from a uniformly-wide strip at the time of its origin to its present "variable" width as a result of years of "use" by the Responding Defendants. However, the only way that such parcel-by-parcel shrinking of the easement could have occurred is through the extinguishment of varying portions of those easements by the various landowners'

prescriptive uses over time. No such use occurred and, resultantly, Responding Defendants' pleadings and papers are completely devoid of any allegation that that any of them has extinguished any portion of the easement through open and notorious use.

Responding Defendants have simply not been able to create any factual dispute concerning the validity of the easement or the need for a minimum of 50 feet of width to effectuate its purpose. Because those are the only two material facts under New York law, the Court should deny the instant Motion, and grant Columbia's pending Motion for Summary Judgment.

<u>RELEVANT FACTUAL BACKGROUND</u>

## The Grant of the Easement

Columbia is a natural gas transmission corporation that transmits and stores natural gas throughout the State of New York and elsewhere. For over 100 years, Columbia has spent considerable time and resources acquiring easements and rights-of-way across the country, including vested land rights in New York State which date back to the 1800s. Columbia employs its land rights to build, expand, maintain and operate its extensive natural gas pipeline network which supplies energy throughout much of the country.

In 1949, Columbia's predecessor-in-interest Home Gas Company acquired an easement from Lillian Alexander that granted the rights, *inter alia*, to lay, maintain, operate, repair, change and remove a natural gas pipeline with ingress and egress to the same. Lake Opp'n Decl. ¶ 5; Ex. A.[2] The grant also included the right, at any time, to lay a second line upon the same terms and conditions as the initial lay. *Id.* Columbia's easement from Ms. Alexander was duly recorded among the land records of the Office of the Orange County Clerk on August 30, 1949, providing the Responding Defendants constructive notice of Columbia's dominant rights. *Id.* Lillian A. Alexander's property was subsequently subdivided into various parcels, and the

---

[2]    Unless otherwise noted, all references to Exhibits herein are to the exhibits annexed to the Lake Opposition Declaration.

subdivisions that are subject to Columbia's Easement are owned by, among others, Responding Defendants. *Id.*

## The Reasonable and Necessary Width of the Easement

The pipeline that Columbia operates under the rights granted in the Easement is a transmission line. *Id.* ¶ 6. The line transmits large volumes of natural gas across the State for ultimate consumption by residential and commercial users, and is transmitted under significant pressure. *Id.* Columbia must maintain and operate the natural gas pipeline in conformity with applicable federal and state laws and regulations, as well as other applicable safety standards, and must be able at all times to locate, access, and inspect the pipeline, and be able to take all steps necessary to detect leaks and to take rapid corrective action if required. *Id.* ¶ 7. Any hindrance or delay in this regard can result in catastrophic failures which could jeopardize public safety. *Id.*

Among other activities, Columbia personnel periodically perform a variety of tests on its natural gas pipelines and attendant facilities which require unobstructed access to its various lines. *Id.* ¶ 8. Operation and maintenance of a natural gas pipeline also requires United States Department of Transportation-mandated inspections at specific intervals across Columbia's rights-of-way by its crews and agents. Resultantly, access to these right-of-ways cannot be restricted or obstructed in any way by the servient landowners. *Id.* A width of twenty-five feet on either side of the pipeline allows Columbia crews and agents, *inter alia*, to safely and promptly inspect for and detect gas leaks and perform other safety related inspections. *Id.* ¶ 9. It also allows for normal operational and maintenance activities to be performed, while providing for safe personnel, vehicular and equipment traffic along either side of the natural gas pipeline. *Id.*

This distance also provides a sufficient perimeter of protection from unauthorized excavations, encroachments or grade manipulation around or near the pipeline that may further endanger public safety. *Id.* ¶ 10. For example, if someone digs too close to the pipeline, the

pipeline itself may be damaged, or the excavation (or even the placement of additional fill) may change the grade of the land and make it more difficult to access, locate, and repair the pipeline in case of an emergency. *Id.* Grade manipulation could also cause sink holes or landslides—both of which can cause damage to a pipeline or the protective coating which prevents pipeline corrosion. *Id.*

In order to safeguard against these and other like events, as well as comply with other applicable safety and maintenance regulations, it is Columbia's policy to maintain and keep clear an approximate twenty-five (25) foot wide area on both sides of its pipeline. *Id.* ¶ 11. In this regard, in instances when Columbia must access its line, employees need to excavate over (pipelines usually have 3 to 5 feet of cover), around, and under the pipeline. *Id.* ¶ 12. Trenching in this manner is subject to various rules and regulations. *Id.* To prevent cave-ins and ensure safe ingress and egress to the trench, trenches are required to be sloped pursuant to a formula that takes into consideration, among other things, depth of the trench and soil type. *Id.* ¶ 13. Different soil types require different minimum rise-to-run ratios ranging from 1:¾ ratio to 1: 1 ½ ratio. *Id.* For example, a 30-inch pipeline with 3 1/2 feet of cover will require a 4 foot trench floor, six feet deep. *Id.* ¶ 14. Even at a 1:1 rise-to-run ratio, the minimum required trench opening is sixteen feet (4 feet trench floor plus sloped walls which extend for six feet from each side of the trench). *Id.* Next, as a precaution against cave-ins, nothing (neither spoil nor equipment) is permitted to be placed within 2 feet of the edge of the trench opening. Thus, those regulations alone leave 15 feet within which Columbia is to work in this common scenario. *Id.*

The next consideration for Columbia is the spoil, which is the earth removed from the excavation site to make the trench. *Id.* ¶ 15. The spoil must remain within the boundaries of the right-of-way, and will occupy the other side of the trench opening. *Id.* The spoil must be piled in a certain sloped manner, and Columbia may be required to segregate the top soil from the subsoil, and store all of it within the right-of-way for the duration of construction. *Id.*

While the spoil occupies the land on one side of the trench, the remaining 15 feet on the other side must accommodate a work space for employees and equipment, an equipment lane for

vehicles, and if Columbia is required to perform topsoil conservation on the work-side of the pipeline, an area to sequester that material. *Id.* ¶ 16. Additionally, heavy vehicles must be able to enter, exit, maneuver, and pass each other, which would be a delicate operation in a 15 foot space even if that space were not also being used for the purposes noted above. *Id.*

The Responding Defendants' Motion presumes that Columbia has some ulterior motive for seeking an overly-expansive easement width. The reality is that the maintenance of the right-of-way is a <u>cost</u> to Columbia. Columbia derives no benefit—and indeed will see only a downside—to bearing the costs of maintaining an easement which is wider than what is needed to properly and safely operate the gas pipeline. *Id.; see also* Exhibit B. Columbia's only interest in maintaining a 50 foot right-of-way is safety and service. *Id.* ¶ 18.

**The Responding Defendants Have Admitted**
**That They Have Always Been Aware That**
**<u>The Easement Covers 50 Feet At All Times</u>**

Despite their protestations, Responding Defendants are acutely aware that the easement covers 25 feet on either side of the pipeline. Indeed, Responding Defendant Edward R. Mateo has provided Columbia with <u>documentary proof</u> of this fact.

In 1992 Mr. Mateo was planning to build a house and install a septic system on one of the subdivided parcels subject to Columbia's easement. On February 14, 1992, prior to commencing construction, Mr. Mateo wrote a letter to Columbia seeking approval of an encroachment that his proposed construction would make upon the easement. Mr. Mateo's letter states in part:

> Please find enclosed a description (map) of our planned intent.
>
> We are aware of the fact that any damage to our property caused by possible Columbia Gas use of the <u>easement</u> would have to be repaired at our expense.
>                            ***
> We have assessed all the physical and logistical aspects as they pertain to us and we forsee [sic] no problems.

Please advise.

Ed Mateo

Lake Opp'n Decl. Ex. D (emphasis added). As mentioned in that letter, Mr. Mateo enclosed a map, or "Plot Plan," depicting his property, and the proposed encroachment. *Id.*

Mr. Mateo's Plot Plan depicts his property, bisected by a pipeline labeled "Columbia Gas Company." Two dotted lines run exactly parallel to the pipeline on either side. The Plot Plan indicates that the dotted lines are exactly 25 feet from the pipeline, plainly marking the boundaries of the easement. The proposed house itself is situated just outside one of the dotted lines, as is a planned septic tank situated next to the house. A long septic pipe leaves the tank and crosses the easement at a 90-degree angle. The septic pipe crosses pipeline and exists the opposite side of the easement, then enters at a rectangular box labeled "RB" (which, again, is proposed to be situated just outside of the dotted line). Seven parallel lines labeled "Proposed Septic Field" extend from the "RB" box, and one of those lines crosses back inside the dotted easement line and runs parallel to it.

Columbia approved Mr. Mateo's proposed encroachment of the easement in an April 3, 1992 letter:

> As shown in your drawing, the four inch septic line may cross perpendicularly to the gas main. After installing the pipe, plastic identifying ribbon shall be installed above the pipe for future warning of its presence.
>
> The lateral line shown within the Right-of-Way will be the only one allowed in the ROW.

*Id.* Ex. E (emphasis added).

Thus, sixteen years ago, one of the Responding Defendants knew precisely how wide the easement was and configured his entire home construction plan to avoid encroaching upon it. When that proved impossible with respect to the septic system, he sought (and received) Columbia's permission to encroach upon the easement.

Now, however, Mr. Mateo feigns ignorance.   Not only that, he has <u>withheld</u> from the Court his own damning cover letter in which he asked Columbia to "please advise" whether he was permitted to encroach upon the "easement."  In his May 12, 2008 Affidavit in support of the Responding Defendants' Motion (the "Mateo Aff."), Mr. Mateo annexed the Plot Plan but conveniently <u>omitted</u> the cover letter which referenced the "easement" and asked Columbia to "[p]lease advise."  Discerning his motive for doing so is not difficult.

Mr. Mateo attempts to explain away the clear meaning of his letter and the dotted lines on his Plot Plan by claiming that he was not recognizing a 50-foot easement, but was simply following federal safety rules and Columbia's "safety guidelines."  Mr. Mateo claims that his depiction of a 50-foot easement on his Plot Plan merely echoed the statements he found on "Guidelines for Construction Activities" sheet distributed by Columbia and his recognition of a "twenty-five feet to be a buffer established by the Federal Energy Regulatory Commission ('FERC')) to ensure the safety of the owner, <u>not as a line intended to define Columbia Gas' easement</u>."  Mateo Aff. ¶ 9.   However, that claim is both factually false and not credible.  It is factually false because the "Guidelines for Construction Activities" clearly state that the 50-foot width is a "Right-of-Way."[3]  Moreover, it is not credible because the correspondence indicates

---

3 The "Guidelines for Construction Activities" annexed as Exhibit C to Mr. Mateo's Affidavit provide in part:

**RIGHTS OF WAY**

<u>To maintain unobstructed rights-of-way</u> to permit Columbia to adequately operate its pipelines, the minimum standards listed below are to be used as guidelines:

\*\*\*

2)     Where other underground or above ground structures are being installed, <u>a minimum of 25 feet of clearance on each side of the pipeline should be maintained.</u>

3)     No above ground or below ground structure of any type shall be placed <u>within 25 feet of any pipeline</u>.

\*\*\*

7)  Septic tanks and fields should be placed so they will drain away from the pipelines where practical but in no case shall they be placed on <u>the right-of-way outlined above.</u>

that Mr. Mateo did not receive a copy of the "Guidelines for Construction Activities" until <u>after</u> he had already submitted the cover letter and Plot Plan.   Specifically, the April 3, 1992 letter from Columbia approving Mr. Mateo's Plot Plan and permitting one line of the Proposed Septic Field to encroach upon the easement expressly states that it enclosed a copy of the "Guidelines for Construction Activities."  This fact strongly suggests that Mr. Mateo's claim that he had the "Guidelines" in hand when he drafted the Plot Plan is not credible, because he first received the "Guidelines for Construction Activities" when that document arrived in his mailbox with Columbia's letter approving the septic system's encroachment on Columbia's easement.[4]

## ARGUMENT

### POINT I

### THE RESPONDING DEFENDANTS HAVE
### <u>NO BASIS FOR SEEKING SUMMARY JUDGMENT</u>

Summary judgment is inappropriate unless the moving party can demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);  *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 196 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Once the moving party has met its initial burden of showing the lack of a genuine issue as to any material fact, the burden shifts to the non-movant to demonstrate the existence of a factual issue requiring trial.  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290,  88 S. Ct. 1575, 1593, 20 L.Ed.2d 569, 593 (1968).  There must be "more than a scintilla of evidence," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) and "more than some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct.

---

[4]    It is noteworthy that Mr. Mateo's Affidavit is cunningly crafted to avoid stating that he had actually seen or had possession of the "Guidelines for Construction Activities" in hand when he drew up the Plot Plan; e.g., "At the time I drew the Plot Plan, <u>I was aware of</u> Columbia Gas' stated construction/ safety guidelines." (Mateo Aff. ¶ 9) (emphasis added).

1348, 1356, 89 L.Ed.2d 538 (1986). Conclusory allegations will not suffice to meet this burden. *Del. & Hudson Railway Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990).

Summary judgment can only issue when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, "no reasonable trier of fact could find in favor of the non-moving party." *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989).

A.    **The Responding Defendants Fail To Even Argue That
      <u>Anything Less Than A 50 Foot Width Is Reasonable and Necessary</u>**

There is no more probative indicator of the rights conveyed and intentions of the parties to an agreement than the agreement itself. *Slamow v. Delcol*, 79 N.Y.2d 1016, 584 N.Y.S.2d 424, 425 (1992)("The best evidence of what parties to a written agreement intend is what they say in their writing.")  Here, the intentions of the parties to the grant of rights are patent:  The easement from Ms. Alexander expressly granted to Columbia the legal rights, *inter alia*, "to lay, maintain, operate, repair, change and remove" a natural gas pipeline across Responding Defendants' properties and to add a second pipeline. *See* Exhibit A.

The instrument does not define the width of the easement available to Columbia to effectuate that goal.  Under New York law, if the document granting an easement does not quantify the width of the easement, the width is supplied by the Court upon a determination of the width that is reasonable and necessary to effectuate the rights granted under the easement. *Town of Ulster  v. Massa*, 144 A.D.2d 726, 528, 535 N.Y.S.2d 460, 461 (3d Dep't 1988); *Le Sawyer v. Squillace*, 14 A.D.2d 961, 221 N.Y.S.2d 455 (3d Dep't 1961)

Columbia has set forth, in its own pending Motion for summary judgment and in the Lake Opposition Declaration submitted in support of that Motion, facts which demonstrate that a width of 25 feet on either side of the linear pipeline is the minimum width reasonably necessary to permit Columbia to accomplish that goal, as well as what is required to permit Columbia to do

so in a manner that protects the safety of Columbia's employees, the public and the Responding Defendants.

As more fully detailed in the Lake Opposition Declaration, a width of 50 feet for the permanent right-of-way under the Easement is what is reasonable and necessary to effectuate the rights granted to Columbia pursuant to the Easement. Indeed, safety is the paramount reason for the fifty-foot distance: safety of Responding Defendants, Columbia's employees and the public at large. Lake Opp'n Decl. ¶18. This distance ensures the space necessary to safely operate and maintain the pipeline and to allowing for proper and adequate work space. *Id.*. ¶¶ 3, 7-18; *See e.g.* 29 CFR §§ 1926.650 *et seq.*; 49 CFR §§ 192.601, *et seq.*; 49 CFR §§ 192.602 *et seq.* This distance also prevents encroachments that could jeopardize the integrity of the pipeline, Columbia's ability to detect any leaks, as well as the migration of gas in case of any leaks. Lake Opp'n Decl. ¶¶ 7-11. And from a practical stand point, a fifty-foot right-of-way is not excessive, but quite restrictive in scope. *Id.* ¶¶ 12-17; *see* Exhibit B. In fact, maintenance of a right-of-way is a cost to Columbia—Columbia gains no benefit from protecting and maintaining a broader easement than it has to. *Id.* ¶ 18.

The strength of those facts has led every court which has addressed this issue to find that a width of 50 feet is reasonable and necessary to adequately and properly maintain and operate a natural gas pipeline in circumstance when the document granting the rights is silent as to the width of the right-of-way. In *Columbia Gas Transmission Corporation v. Large*, 63 Ohio Misc. 2d 63, 619 N.E.2d 1215 (Ohio Ct. Com.Pl. 1992), the parties there (like here) disputed the width of a right-of-way granted under a document that was silent as to the width of the right-of-way, but which expressly granted Columbia the "right to lay, maintain, operate, repair, replace and remove" a natural gas pipeline. *Id.* at 1216. The Court there determined that, under the rights granted pursuant to the right-of-way agreements, a 50-foot width is what is reasonable and necessary to safely and properly operate and maintain a natural gas pipeline.

The same set of facts is found in *Columbia Gas Transmission Corporation v. Tarbuck*, 845 F.Supp. 303 (W.D. Pa. 1994) *aff'd* 62 F.3d 538 (3d Cir. 1995). There, the pipeline company

- 11 -

had the stated right under an easement to "maintain, operate, repair, and remove" a natural gas
pipeline pursuant to an easement that did not quantify the width of the right-of-way granted. 854
F.Supp. at 305). The District Court considered the same safety and maintenance factors set forth
above and held that anything less than a fifty-foot right-of-way "would effectively preclude
Columbia from using the right-of-way for its intended purpose of maintaining and repairing" the
pipeline. 845 F.Supp. at 310). In affirming, the Third Circuit held that the stated purpose of the
grant was the operation of a pipeline, and that a width of fifty feet was reasonable and necessary
to effectuate that purpose. 62 F.3d at 544. *Tarbuck*'s factual basis is on all fours with the instant
case, and its reasoning is compelling:

> the entire right-of-way granted to Columbia is 50 feet wide. To
> find otherwise would effectively <u>preclude</u> Columbia from using the
> right-of-way for its intended purpose of maintaining and repairing
> [the natural gas pipeline].

845 F.Supp. at 309-10 (emphasis added)..

Indeed, courts which have addressed this issue routinely hold that, in undefined right-of-
ways, the "reasonable and necessary" width to operate and maintain a natural gas pipeline is 50
feet (25 feet on either side of the pipeline). *See Columbia Gas Transmission Corp. v. Savage*,
863 F. Supp. 198, 202 (M.D. Pa. 1994) ("The evidence in the record shows a fifty (50) foot
width area is necessary for the use of the right-of-way by the Plaintiff and in maintaining the
safety of the area."); *Columbia Gas Transmission Corp. v. Adams*, 646 N.E. 2d at 926 (Ohio Ct.
Com. Pl. 1994) ("It is standard practice in the operation of an underground natural gas pipeline . .
. to keep at least twenty-five feet on each side of the pipeline free and clear of encroaches so that
inspections, maintenance, and repairs can be safely and efficiently undertaken"); *see also
Columbia Gas Transmission Corp. v. Burke*, 768 F. Supp. at 1173 (N.D.W.Va. 1990).

**B.      Responding Defendants' Proposed "Use" Test Has No Support In Fact Or Law**

In the face of the undisputed evidence and case law noted above, it is not surprising that
Responding Defendants have not even attempted to contest Columbia's evidence that 50 feet is

the necessary and reasonable width of the easement. Instead, Responding Defendants have ignored New York's long-recognized "reasonable and necessary" test and attempted to graft a "prior use" test onto the law. Essentially, they claim, it does not matter what is reasonable and necessary at present; all that matters is what the parties have done with the easement in the past.

However, there is no support—neither in the facts of this case nor in New York law—for responding Defendants' novel approach. First, it is plain from Responding Defendants' Motion that Columbia has always "used" the easement as a 50-foot wide zone. It is also clear that responding Defendants' claim of ignorance of that fact is a ruse. Indeed, Mr. Mateo's own cover letter to Columbia in 1992 confirms that he has long recognized that Columbia's easement extends 25 feet on either side of the pipeline.. Thus, even if the law recognized a "use" test (and it does not), there is no genuine issue concerning the fact that Columbia's use has been consistent as requiring all 50 feet of the easement.

Second, Responding Defendants' failure to allege in any pleading or paper that any one of them has extinguished any portion of the easement through open and exclusive use is a tacit admission that their proposed theory does not hold water. An easement which was created while the Responding Defendants' plots were a single-owner swath of forestland cannot now have an irregular shape that varies parcel-by-parcel unless that easement has been extinguished in different degrees by each parcel-owner's prescriptive use of it. Respondents do not even attempt to claim that this occurred.

All of that is, of course, irrelevant because New York law does not recognize the "use" test that Responding Defendants postulate. The Responding Defendants' claim that *Cassella v. Gallo,* 197 A.D.3d 825, 189 N.Y.S.2d 531 (3d Dep't 1921) requires the Court to consider "the use by the parties over time" as evidence of the easement's width is simply false. Indeed, *Cassella* represents nearly the opposite of the Responding Defendants' characterization. *Cassella* merely states that where the purpose of an easement (in that case, "right of way for persons and wagons, animal or animals") is expressly set forth, the Court will construe the easement to effectuate that purpose, and will not modify the scope of the easement to

- 13 -

accommodate changed uses (there, the advent of motorized vans too tall to fit under the dominant landowner's overhanging porch). When the servient landowner sued to have the overhanging porch removed, the appellate court ruled that the purpose of the easement was for animal and wagon passage, which was as possible with the porch in place as without. Thus, the court rejected an attempt to alter the clearly-defined scope of the easement.

Columbia's use of the easement has not changed whatsoever since 1949. It has always been used "to lay, maintain, operate, repair, change and remove a natural gas pipeline." Indeed, unlike Cassella, there has been no change in the relevant technology: the vehicles used by Columbia now have the same basic dimensions that they did in the years just after World War II.

Nor does *Oliphant v. McCarthy*, 208 A.D.2d 1079, 617 N.Y.S. 2d 555 (3d Dep't 1994), provide any support for Responding Defendants "use" test. Indeed, Oliphant, too, merely restates the "reasonable and necessary" test in holding that an express easement of undefined width is deemed to be as wide as "is necessary for the use for which the right-of-way was created." *Id.* at 1080. The evidence indicated that the easement was intended as a route for vehicles and traffic to a lot containing a single-family home; in other words, a driveway. When the dominant landowner demanded that the easement be deemed 50 feet in width, the Court demurred, finding that the parties never intended or implemented any use which came close to the 50 foot demand.

Finally, Responding Defendants' attempt to support their theory by referring the Court to *Rivlin v. Sigalos*, 9 Misc.2d 373, 172 N.Y.S.2d 882 (Rennselaer Co. Supreme Ct. 1957), is beyond comprehension and indicates that Responding Defendants themselves to not understand the gravamen of that case. Responding Defendants' discussion of Rivlin fails to point out that there are two separate easements at play, and that the only easement with "silent" terms was silent as to purpose, not just width. The Rivlin court therefore examined the parties' course of conduct of using the right of way "to deliver merchandise, fuel oil, and coal to the rear entrance of plaintiffs' premises" for evidence of the purpose for which the easement was granted, not for evidence of its width. *Id.* at 377. Once that purpose was ascertained, the court ruled that the

defendants' actions in preventing such use violated the rights of the dominant landowner. The Rivlin court's did not even attempt to set the width of the undefined easement, which makes Responding Defendants' reliance on Rivlin here somewhat baffling.

The Responding Defendants have not—and cannot—elucidate any plausible theory under which the facts of this case lead to summary judgment in their favor. Their attempt to graft an alternative, "use"-based test onto the long history of New York jurisprudence on this issue finds no support in the law, and would have no factual basis in this case in any event because there is no evidence that Columbia's or Responding Defendants' "use" of Columbia's easement ever treated it as anything less than 50 feet wide.

## POINT II

### THE RESPONDING DEFENDANTS HAVE<br>NO BASIS FOR SEEKING ATTORNEYS' FEES OR COSTS

Responding Defendants' request for attorneys' fees and costs is inane. As Responding Defendants note in their motion papers, the American rule provides that in the absence of a statutory or contractual right to attorneys' fees, the parties to litigation are responsible for their own attorneys' fees. Responding Defendants' vague claim that a clause in the grant of the Columbia easement to pay "damages" amounts to a promise to pay attorneys' fees is facially without merit. A plain reading of the grant of rights dispose of their claim, and New York case law has roundly rejected attempts to contort the common and general statement in a grant of easement rights into a covenant to pay attorneys' fees:

> The clause in this agreement does not contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant. . . . All the[] subjects are susceptible to third-party claims for failures in the installation or operation of the system. None are exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract.

*Hooper Assoc's, Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 492, 548 N.E.2d 903 (N.Y. 1989) (emphasis added).

Indeed, Responding Defendants' attorneys' fees request is particularly galling in view of the fact that their own intransigence required Columbia to sue them. It would be an absurd result for any court to rule that the party in the wrong could essentially force the aggrieved party to resort to the justice system and then hand the aggrieved party a bill for its legal fees. Such gamesmanship should not be tolerated, and the responding Defendants' request for attorneys' fees should be dismissed out-of-hand.

## CONCLUSION

The Court should deny Respondents' Motion for the reasons set forth above, and should grant such other and further relief in favor of Columbia as it deems just, proper, and equitable.

Dated:   New York, New York
         June 18, 2008

**REED SMITH LLP**

By:_____
        Wallace B. Neel (WN 0038)
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Columbia Gas Transmission Corp.*

- 16 -